SARAH E. MELLEN, Respondent, *v.* WILLIAM C. BANNING, Individually and as Sole Surviving Executor of the Last Will and Testament of ABNER MELLEN, Deceased, MARIA L. KENDALL, HELEN J. BANNING, ABNER M. WILCOX and WINIFRED WILCOX, Appellants.

*Action of partition — construction of a will — lands devised in fee and power of sale thereof given to executors — equitable conversion — reconversion into realty — power of sale not a bar to the action for partition — query, whether repugnant to the devise — assertion that a sale is against interest — legal right to a partition — valid exercise of a power of sale — sufficiency of evidence of insolvency — right of a failing debtor to pay claims, usurious or barred by the Statute of Limitations — defect of parties — form of judgment.*

Upon the trial of an action of partition it was shown that the former owner of the premises sought to be partitioned, died, leaving a will, by which, under the fifth clause thereof, he devised all his real estate to his wife, Helen M. Mellen, and his three children, Abner Mellen, Jr., Maria L. Kendall and Helen J. Banning, share and share alike ; and by the eighth paragraph of his will, he gave power and authority to his executrix and executors and the survivors of them, for the purposes of a division or distribution, or for any other purpose, that they in their best judgment might think proper, to sell and convey, either at public or private sale, all or any of his real estate, and to apply the proceeds of such sale or sales in conformity to the provisions of his will.

*Held,* that under the fifth clause of the testator's will his devisees acquired the absolute fee of all the lands of which he died seized, subject to the execution of the power contained in the eighth clause;

That the power of sale in the will did not convert the land into personalty;

That the devisees and their successors in interest were entitled to the possession of the land, and to receive the rents and profits of it ;

That the power of sale contained in the eighth clause was not a beneficial one, but was a general power in trust, and could be executed by the executors only for the purpose of administering the estate committed to their charge as such ;

That the power, so far as it authorized a sale for the purpose of division, was a mere collateral one, or power in gross, and was not appurtenant to any estate granted to or trust reposed in the executors ;

That such power of sale was not a bar to an action in equity to effect the division of the real estate.

Query, whether, when land is devised in fee to persons competent to convey their interests, a power conferred on executors as such to sell and convey the same land and divide the avails among the devisees is valid, and is not repugnant to the devise.

On the trial the defendants did not claim that a present partition would not be for the best interests of the parties, and they asserted the validity of certain

sales admitted to have been made pursuant to the power for the purpose of dividing the estate.

*Held,* that they were not in a position to make a claim that the partition was not for the best interests of the parties.

Query, whether, if it had appeared that for any reason a sale under such a power would be more beneficial to the parties in interest, or that a present sale would be injurious to their interests, or that some of the owners were not competent to convey, a court of equity might withhold its judgment.

When land is converted into money by a will the beneficiaries may reconvert it into realty, if it is not needed for the purposes of administration, and the power of the executor to sell is extinguished.

The right of a tenant in common having an estate of inheritance, or for life, or years, to maintain an action for the partition of the interests in land, is a legal right.

On April 17, 1890, the surviving executor, assuming to act under the power, sold at public auction No. 204 Fifth avenue to one Warren for $270,000, subject to a mortgage thereon. The purchaser executed a contract and paid ten per cent, but afterwards refused to take the title because of the pending litigation in respect to it, and brought an action for the recovery of the money he had paid, in which it was held by the court that the executor could not compel the specific performance of the contract. The executor attempted to sell other pieces of the property under such power of sale, but nothing was paid therefor, the bids made on such sales having been assigned to two of the defendants. It did not appear that such attempted execution of the power was at the request of any of the devisees, while it was shown that the defendants moved for and obtained a final judgment confirming the sale made under the interlocutory judgment in the present action which provided that five-sixteenths of the proceeds be paid to the plaintiff, and a like proportion to Maria L. Kendall and Helen J. Banning, and one-sixteenth to Abner M. Wilcox. Whether they accepted the moneys resulting therefrom did not appear.

*Held,* that it did not appear that there had been a valid execution of the power of sale by the executor, or that any of the land had passed to the purchasers thereunder;

That the effect of the power of sale and its attempted execution was not dependent upon any question of fact, but was a pure legal question arising upon the face of the will and a few undisputed facts.

It was shown that three judgments were recovered against Abner Mellen, Jr.; one October, 1889, by Abner M. Wilcox for $351.53, one January, 1890, by Maria L. Kendall for $1,386.34, and one January, 1890, by Helen J. Banning for $1,386.34, on all of which judgments executions were returned wholly unsatisfied.

That on February 7, 1891, three judgments were recovered against Abner Mellen, Jr., for $3,991.57 each, one by Maria L. Kendall, one by Helen J. Banning and one by William C. Banning, as one of the administrators of Helen L. Mellen, deceased, on which it did not appear that executions had been issued or returned.

That on November 3, 1888, Abner Mellen, Jr., executed a conveyance of his interest in the real estate of which the testator died seized to a third person, who, the same day, conveyed the same to his wife, Sarah E. Mellen, the plaintiff, both of which deeds were recorded November 28, 1888.

The defendants alleged that at that time Abner Mellen, Jr., was insolvent, and indebted for the sums for which such judgments had been recovered against him, and to his father's estate for $77,000, and the action was changed into one in the nature of a creditor's bill to set aside the conveyance to the plaintiff.

On April 24, 1889, Abner Mellen, Jr., made a general assignment for the benefit of creditors, without preferences, to one McKay, who accepted the trust and entered upon its execution, and on March 6, 1890, Abner Mellen, Jr., died intestate. Letters of administration were granted on his estate to his widow, but this action was not revived and continued against her as such administratrix, nor have his assignee or heirs been made parties thereto.

The jury found that Abner Mellen, Jr., was indebted to the plaintiff, on November 5, 1888, in the amount of $82,487.09, and that the value of the interest that day conveyed to the plaintiff by him was $80,000, and it also found a general verdict for the plaintiff.

The facts considered under which it will be

*Held,* that the evidence is sufficient to support such a finding of the jury.

A failing debtor may pay or secure to be paid a debt barred by the Statute of Limitations, or one which he might defend as usurious; or, if he has agreed to pay interest upon unpaid interest, he may pay or secure its payment, and if done in good faith, the payment made or security taken cannot be set aside by his creditors.

The jury found that the father of Abner Mellen, Jr., surrendered to him nine notes in the aggregate amount of $77,000.

*Held,* that in the face of the written admissions of Abner Mellen, Jr., and of other evidence which showed that the notes were uncanceled and in the possession of his father at the time of his death, such finding must be set aside, together with the general verdict, in so far as it can be deemed to sustain the same;

That whether Abner Mellen, Jr., was or was not indebted to his father's estate could not be determined in this action without the presence of his administratrix in her representative capacity as a party;

That, under the circumstances, the final and interlocutory judgments should be modified by reversing the provisions holding that the plaintiff was entitled to five-sixteenths of the avails of the sale free from any lien and directing that the avails be paid directly to her, and should direct that the amount of the avails of the plaintiff's interest in the real estate, be paid into a trust company to await the determination of what, if any, liens existed on her share, and that any party to the action be given leave to apply to bring in any necessary parties to determine what liens exist, their amount, and whether prior or subsequent to the claim of the plaintiff, and that a reference should be ordered for the purpose of determining that question.

APPEAL by the defendants, Maria L. Kendall, Helen J. Banning, William C. Banning, her husband, individually, Abner M. Wilcox

and Winifred Wilcox, his wife, and William C. Banning, as executor of the last will and testament of Abner Mellen, deceased, from a final judgment of the Supreme Court in favor of the plaintiff, rendered at the New York Special Term and entered in the office of the clerk of the city and county of New York on the 7th day of April, 1892, and from the interlocutory judgment made at the New York Special Term and entered in the office of the clerk of the city and county of New York on the 25th day of November, 1891, and from an order made at the New York Circuit and entered in the office of the clerk of the city and county of New York on the 31st day of October, 1890, denying the defendants' motion for a new trial upon the minutes, and from an order made at the New York Special Term on the 23d day of December, 1891, and entered in the office of the clerk of the city and county of New York, denying the defendants' motion for a new trial, and for a rehearing of the motion made at the New York Circuit, and from an order made at the New York Special Term on the 23d day of December, 1891, and entered in the office of the clerk of the city and county of New York, denying the defendants' motion for a new trial and to set aside the verdict.

This action was begun November 30, 1888, to partition the land which Abner Mellen owned at the date of his death. He died May 27, 1887, seized in fee of three pieces of land, one known as No. 204 Fifth avenue, one as No. 6 Mulberry street and the other being a piece seventy-one feet and three inches wide by ninety-two feet in length, situated on the south side of East Seventeenth street and known as Nos. 516, 518 and 520. He left him surviving Helen L. Mellen, widow, Abner Mellen, Jr., a son, Maria L. Kendall, a daughter, Helen J. Banning, a daughter, and Abner M. Wilcox, a grandson, the son of a deceased daughter, as next of kin and heirs at law. He left a will which contains, among others, the following clauses:

"*Fifth.* All the real estate of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease, I give and devise and bequeath unto my wife, Helen L. Mellen, and my three children, Abner Mellen, Jr., Maria L. Kendall and Helen J. Banning, share and share alike, to them, their heirs and assigns forever."

"*Eighth.* I hereby give full power and authority to my said executrix and executors, or whichever of them shall qualify, and the

survivors and survivor of them, for the purposes of a division or distribution, or for any other purpose that they, in their best judgment, may think proper, to grant, alien, sell and convey, either at public or private sale, all, or any, real estate owned by me, or to which I shall be entitled, or in which I shall have any interest, at the time of my decease, and to apply the proceeds of such sale or sales in conformity to the provisions of this, my last will and testament."

June 15, 1887, the will was admitted to probate and letters thereon were issued to Helen L. Mellen, Abner Mellen, Jr., and William C. Banning, the persons nominated as executors by the testator, who entered upon the execution of the trust. September 28, 1888, Helen L. Mellen died intestate, leaving said Abner Mellen, Jr., Helen J. Banning and Maria L. Kendall, her children and Abner M. Wilcox, a grandson, the child of a deceased daughter, her next of kin and heirs. On the death of the widow, each of the three children became entitled to an undivided five-sixteenths, and the grandson to an undivided one-sixteenth of the realty of which Abner Mellen, Sr., died seized. October 15, 1888, letters of administration were granted on the estate of Helen L. Mellen to Abner Mellen and William C. Banning. November 3, 1888, Abner Mellen, Jr., conveyed his five-sixteenths to Lawrence E. Ellis, who, on the same day, conveyed the same interest to Sarah E. Mellen, the wife of Abner Mellen, Jr. Both deeds were duly recorded November 28, 1888.

When this action was begun Abner Mellen, Jr., Helen J. Banning, William C. Banning, her husband, Maria L. Kendall, Abner M. Wilcox and Winifred Wilcox, his wife, were made defendants. William C. Banning was not at first joined in his representative capacity. The complaint set forth the title as hereinbefore stated, and demanded a judgment that the premises be partitioned, or, in case they could not be, without injury to the interests of the owners, that they be sold and that a receiver be appointed to collect the rents during the pendency of the action. Abner Mellen never appeared in the action. The other defendants answered jointly. They admitted that Abner Mellen, the plaintiff's husband, by the devise of his father, and by descent from his mother, acquired five-sixteenths of the premises, but denied that the plaintiff was the

owner of five-sixteenths of the premises, and alleged that she had no interest in them except her right of dower as the widow of Abner Mellen.

The defendants alleged in their answer that when Abner Mellen executed the conveyance of his interest he was indebted to his father's estate in the sum of $130,116.67; to Maria L. Kendall in the sum of $7,896.35, and to his said two sisters and Abner M. Wilcox, for rents collected from the tenants of said premises, in more than $12,000. It is also alleged that Abner Mellen was required to account in the Surrogate's Court as the representative of the estate of his father and mother, and that by the decree of that court he. was directed to pay Maria L. Kendall $11,707.36; Helen J. Banning the sum of $11,707.36; to William C. Banning and Abner Mellen, as administrators of the estate of Helen L. Mellen, the sum of $17,561.05, and that it was further adjudged that he was indebted to his father at the date of his death in the sum of $77,000, and that July 20, 1889, judgments were entered on the decree of the surrogate in favor of Maria L. Kendall, Helen J. Banning, and William C. Banning and Abner Mellen, as administrators for the sums aforesaid, and that executions were issued upon those judgments and returned wholly unsatisfied. It is also alleged that Abner M. Wilcox recovered a judgment October 18, 1889, against Abner Mellen for $351.53, and that an execution was afterwards issued and returned wholly unsatisfied, and that Maria L. Kendall assigned her claim against Abner Mellen for $7,896.35 to Banning, Bissell & Co., who, December 16, 1889, recovered a judgment thereon for $8,939.36. It is alleged that the conveyances from Abner Mellen to Lawrence E. Ellis and from him to the plaintiff were made with intent to hinder, delay and defraud the creditors of said Abner Mellen and especially to defraud Maria L. Kendall, Helen J. Banning and Abner M. Wilcox, and that said conveyances were void as against them.

April 24, 1889, Abner Mellen made a general assignment for the benefit of creditors, without preferences, to Gordon McKay, who accepted the trust and entered upon its execution.

March 6, 1890, Abner Mellen died intestate, leaving him surviving Sarah E. Mellen, widow, Gordon McKay Mellen, son, Stanley Mellen, son, Evelyn Mellen, daughter, his only heirs and next of kin, and on the 14th day of April, 1890, letters of administration were

granted on his estate to his widow, Sarah E. Mellen; but this action has not been revived and continued against his representative, and neither his assignee nor heirs have been brought in as parties. On the 6th of August, 1890, an order was made at Special Term directing that the summons and complaint and all the papers in the action be amended by inserting after the name William C. Banning the words "individually and as sole surviving executor of the last will and testament of Abner Mellen, deceased," and that a copy of the summons and complaint so amended be served on him, and that he be made a party defendant in his representative capacity. This was done, and he appeared and answered, setting up the defenses interposed in the joint answer before served, and also that on the 17th of April, 1890, he executed the power of sale contained in the eighth clause of the will of Abner Mellen, and sold all of the lands devised by him.

*Joseph H. Choate*, for the appellants.

*Henry Dailey, Jr.*, for the respondent.

FOLLETT, J.:

Under the fifth clause of the testator's will his devisees acquired the absolute fee of all the lands of which he died seized, subject to the execution of the power contained in the eighth clause. (1 R. S. p. 739, § 56; *Mellen* v. *Banning*, 60 Hun, 151; *Clift* v. *Moses*, 44 id. 312; affd., 116 N. Y. 144.) They took precisely the same estate that they would have done had all of the land been subject to a mortgage, containing a power of sale executed by the testator or by some former owner of the fee. The will did not convert the land into personalty out and out, but it remained realty (*White* v. *Howard*, 46 N. Y. 144–162; *In the Matter of the Will of Fox*, 52 id. 530–537; affd., *United States* v. *Fox*, 94 U. S. 315; *Hobson* v. *Hale*, 95 N. Y. 588), and the devisees and their successors in interest were entitled to the possession of the land and to receive the rents and profits of it. (*Clift* v. *Moses, supra*, and the cases therein cited.)

The power of sale contained in the eighth clause is not a beneficial one, but it is a general power in trust. (1 R. S. p. 732, §§ 78, 79; p. 734, § 94.) The power is conferred on the executors in their rep-

resentative capacity and not on them as individuals, and it could be executed only for the purpose of administering the estate committed to their charge as executors. (*Sweeney* v. *Warren*, 127 N. Y. 426.) Had it been necessary to sell the realty to pay the debts of the testator, undoubtedly the power might have been exercised for that purpose, and so we shall assume it could have been for the purpose of dividing the estate among those entitled thereto, but we cannot conceive of any other purpose for which it could have been exercised. It is not asserted that any of the testator's debts are unpaid, nor is it claimed that the attempted execution of the power by the surviving executor was for any purpose except to divide the avails arising from the sale among the devisees, their heirs, grantees and the holders of liens. There being no debts it is apparent that the power could be exercised only for the purpose of dividing the estate among those entitled to it. The power, so far as it authorizes a sale for the purpose of division, and that is the only purpose for which it now exists, is a mere collateral one, or power in gross, and is not appurtenant to any estate granted to, or trust reposed in, the executors.

In discussing this case we shall assume, without deciding, that when land is devised in fee to persons competent to convey their interests, that a power conferred on executors as such, to sell and convey the same land and divide the avails among the devisees, is valid, and is not repugnant to the devise. Was this power of sale, which could be exercised only for the purpose of division among the owners of the fee, an absolute bar to an action in equity to effect the same purpose? It seems to us that the question admits of but one answer and that in the negative. It may be that in a case in which it should appear that for any reason a sale under such a power would be more beneficial to the parties' interest, or that a present sale would be injurious to their interests, or that some of the owners were not competent to convey, that a court of equity might withhold its judgment. But this question we do not decide, for under our statutes the right of a tenant in common having an estate of inheritance, or an estate for life, or for years, to maintain an action for the partition of the interests, is a legal right. (Code Civ. Proc. § 1532.) The appellants in this case did not claim on the trial that a present partition would not be for the best interests of the parties,

and standing as they did, asserting the validity of the sales admitted to be made pursuant to the power for this very purpose, they were not and are not in a position to make such a claim.

In *Morse* v. *Morse* (85 N. Y. 53), an action for partition, it was said: "The plaintiff, Charles D. Morse, is one of the sons of the testator, and claims that by the will, the five children of the testator first mentioned, and the trustee of his son Edwin, took upon the testator's death a present legal estate in the farm as tenants in common, subject to a bare power of sale vested in the executor. If this is the true construction of the will, the right of the plaintiffs to maintain an action for partition may be conceded."

In *Blanchard* v. *Blanchard* (4 Hun, 287 ; S. C., 6 T. & C. 551 ; affd., 70 N. Y. 615), an action for partition, the testator, who died May 10, 1873, devised to his widow and to two of his children the use of his farm until June 29, 1890. He further directed that within two years after June 29, 1890, his executor should sell the farm and divide the proceeds arising from the sale among certain persons named in the will. An action to partition the farm was brought by one of the devisees within two years after the death of the testator, and it was held that the naked power of sale vested in the executor did not suspend the power of alienation, and that its existence was not a bar to an action brought for partition. The execution of a bare power of sale is not a conveyance by the donee of the power, but is regarded as the act of the donor of the power. It was said in the case last cited : "Before execution, the power is a lien or charge upon the lands (1 R. S. p. 735, § 107), and has no greater effect upon the interests of heirs or devisees than a mortgage made. by the testator, payable at the time fixed for the execution of the power, would have had. No one would question the validity of a mortgage given by a testator to secure the payment of a sum of money twenty years after his death because it contained the usual power of sale. No doubt such a power in either case obstructs the sale or other disposition of lands by the owner, but not by reason of the time limited for the exercise of the power. It would ordinarily have the same effect if no restriction as to time were imposed ; but the absolute right of alienation of the fee is not affected thereby. In the case before us the residuary devisees took an estate in fee, which, notwithstanding the incumbrance of the power, is neither

defeasible nor conditional, and they may alienate it at pleasure. A conveyance from them and the devisees of the term would pass the whole estate."

In *Purdy* v. *Wright* (44 Hun, 239 ; S. C. fully reported, 8 N. Y. St. Repr. 243) — an action for partition of land — it was held that the existence of a naked power of sale in executors for the purpose of division of the proceeds was not a bar to an action by the devisees for partition. In that case, however, the power had remained unexecuted for more than twenty-five years.

In *Duffy* v. *Duffy* (50 Hun, 266 ; affd., 130 N. Y. 654) — an action for partition — the testator devised one-half of his real estate to his widow, but died intestate as to the remainder, which descended to his heirs. He authorized his executors " to sell and dispose of said estate at public auction, and to convey the same, with full power to execute a good and sufficient deed in law therefor." It was held that notwithstanding this power of sale an heir could maintain an action for partition.

The case last cited was commented on in *Fritz* v. *Fritz* (43 N. Y. St. Repr. 755 ; S. C., 17 N. Y. Supp. 801), where it was said : " The case of *Duffy* v. *Duffy* (50 Hun, 266 ; 19 N. Y. St. Repr. 228), in no wise conflicts with this view. In that case there was no devise of the real estate in question or of the proceeds thereof. The will contained a mere naked power of sale, and all that was held was that the real estate descended to the heirs at law, and unless the power of sale was exercised its existence was no bar to partition."

*Henderson* v. *Henderson* (113 N. Y. 1), was an action for the construction of a will which authorized the executor to take entire charge and management of all of the real and personal estate of the testator, lease it, collect the income, rents and profits, make investments, insure, pay taxes, make repairs, pull down buildings and erect new ones ; it also contained a power to partition or sell the realty. The question in the case was whether a valid trust was created, and if so, whether it suspended the power of alienation beyond the statutory limit. It was held that a trust was not created, but that the executor was invested with the power of sale together with the power to manage the estate and receive the income and rents until partitioned by him or sold by him as authorized by the

will and the avails divided. In the course of the discussion it was said : " The powers of partition and of sale being valid, however, the children of the testator took their interests at his death subject to their exercise, and, hence, one or more of them could not maintain any compulsory partition proceedings, pending the existence of the right in the executor' to exercise his powers." This question was not involved in the case, and the observation quoted was by way of argument.

In *Prentice* v. *Janssen* (79 N. Y. 478), the will under consideration directed the executors to sell all of the realty and convert it into money. This was a conversion out and out. The court held that the beneficiaries under the will could, by electing to hold the property as realty, defeat the power of sale. It was said : " The testator, by the authority and direction to his executors to sell the real estate, constructively converted the same into personal estate, and, being thus converted, the residuary legatees were entitled to take the same as such, and had a right at their election to reconvert into real estate. No distinct and positive act is required for such a purpose, and the rule applicable to such a case is that in the reconversion of real estate a slight expression of intention will likewise be considered sufficient to demonstrate an election on the part of those absolutely entitled."

In that case it was held that the land could be partitioned among the owners notwithstanding the power to sell. When land is devised upon a trust to sell and pay the proceeds to A, although no interest in the land is expressly given to A, yet in equity he is the owner, and the donee of the power must convey as the equitable owner directs. (Leigh & Dalzell on Conversion, 169.)

Aside from the authorities, we think, on principle, the power, assuming its validity, was not a bar to a voluntary partition among the owners of the fee, nor to an action by any of them for partition. The sale of the land not being necessary for the payment of debts, the executor had no control over it for the purposes of administration. The owners had the absolute right of possession, together with the right of collecting the rents. They could convey it or divide it among themselves on such terms as they might agree, and either course would extinguish the power. When land is converted into money by a will the beneficiaries may reconvert it into realty,

if it is not needed for the purposes of administration, and it becomes such, and the power of the executor to sell is extinguished. (Jarman on Wills [6th Am. ed.], 562.) In this case the devisees had renewed old leases and executed new ones of the property, and treated it as land held by them in common. It does not appear that the attempted execution of the power was at the request of any of the devisees.

On the 17th of April, 1890, Banning, the surviving executor, assuming to act under the power, sold at public auction No. 204 Fifth avenue to George H. Warren for $270,000, subject to the mortgage thereon for $50,000 held by the Mutual Life Insurance Company. The purchaser executed a contract and paid ten per cent, but afterwards refused to take the title because of the pending litigation in respect to it, and brought an action for the recovery of the money he had paid. The records of this court show that he was successful, and that it was held that the executor could not compel the specific performance of the contract. (*Warren* v. *Banning*, 50 N. Y. St. Repr. 810; 21 N. Y. Supp. 883.) No. 6 Mulberry street was bid off at the sale for $27,000, and the East Seventeenth street property for $47,000, by Benjamin P. Fairchild for Mrs. Banning and Mrs. Kendall, but nothing has been paid for either piece of property, and Mr. Fairchild never executed a contract but assigned his bids to Mrs. Banning and Mrs. Kendall. It does not appear that there has been a valid execution of the power of sale, or that any of the land has passed to purchasers under it. Again, it appears by the record that the appellants to this action moved for and obtained the final judgment confirming the sale made under the interlocutory judgment, which directs that five-sixteenths of the avails of the sales be paid to the plaintiff and a like proportion to Mrs. Kendall and to Mrs. Banning, and one-sixteenth to Abner M. Wilcox. Whether these appellants have accepted of these moneys does not appear from the printed case.

The effect of the power of sale, and its attempted execution, is not dependent upon any question of fact, but is a pure legal question arising upon the face of the will and a few undisputed facts. This branch of the case was not involved in any question tried before or submitted to the jury.

By the course taken on the trial this action was converted into a creditor's bill in favor of Maria L. Kendall, Helen J. Banning and

FIRST DEPARTMENT, OCTOBER TERM, 1893.            [Vol. 72.

Abner M. Wilcox to set aside the conveyances from Mellen to Ellis, and from the latter to the plaintiff, upon the ground that they were fraudulent and void as against creditors. The record shows that October 18, 1889, Abner M. Wilcox recovered a judgment against Abner Mellen for $351.53, on which an execution was returned December 19, 1889, wholly unsatisfied, and that January 24, 1890, Maria L. Kendall recovered a judgment against Abner Mellen for $1,386.34, on which an execution was returned March 18, 1890, wholly unsatisfied, and that on January 24, 1890, Helen J. Banning recovered a judgment against Abner Mellen for $1,386.34, on which an execution was returned March 18, 1890, wholly unsatisfied.

The record also shows that February 7, 1891, three judgments were recovered against Abner Mellen for $3,991.57 each, one by Maria L. Kendall, one by Helen J. Banning and one in favor of William C. Banning, as one of the administrators of Helen L. Mellen, deceased. It does not appear that executions have been issued or returned on the three judgments last mentioned.

The defendants, for the purpose of establishing the fraudulent character of the conveyances, asserted and attempted to maintain on the trial before the jury two propositions :

(1) That the property conveyed to the plaintiff largely exceeded in value the amount in which Abner Mellen was indebted to her. (2) That at the time of the conveyance the grantor was insolvent and indebted for the sums for which the aforesaid judgments were recovered, and also indebted to the estate of his father for $77,000 on nine notes given by the son to the father January 28, 1885. Eight of the notes were for $8,375 and one for $10,000. The first note to become due was payable January 31, 1890, and a note fell due on each thirty-first day of January thereafter. The one for $10,000, the last to mature, is to become due January 31, 1898.

The contest waged before the jury was principally over these two questions of fact. The court, at the request of the counsel for the defendants, submitted to the jury the following written questions :

" *First.* Was the indebtedness of Abner Mellen, Jr., to the plaintiff on November 5, 1888, the balance shown by the books of Mellen & Company, amounting with interest to $19,889.62 ; if not this sum, what sum ? " The jury answered that the indebtedness was $82,487.09.

"*Second.* What was the value of the interest in the real estate conveyed to plaintiff on November 5, 1888; was it $107,000; if not, what was it?" The jury found that the value of the interest conveyed in the real estate at the date when conveyed was $80,000, and the jury also found a general verdict for the plaintiff.

It is urged that the special findings which embrace the important issues in this case are contrary to the weight of the evidence. We will briefly examine the evidence on which these findings rest. *First.* Is the evidence sufficient to sustain the finding that the value of the five-sixteenths interest conveyed to the plaintiff at the date of the conveyance was worth $80,000? Two experts were called by each side and gave their opinion of the value of the property. The property was described and its rental value proved, and from this evidence and the opinions of the four experts, we think the finding of the jury as to value cannot be set aside as against the weight of evidence. The learned counsel for the appellants concedes in his brief that the result of the evidence of Meyer, their principal witness on the question of value, was that the interest when conveyed was worth $95,000, but $15,000 more than the value as found by the jury. This difference of opinion as to value of this kind of property involved in litigation, part of the owners claiming that title could only be acquired to it through the exercise of the power of sale, and one of the owners claiming title could be acquired only through a judgment in partition, is not so wide as to authorize this court to say that the opinion of the jury is contrary to the weight of evidence. On the contrary, upon a consideration of all the circumstances, we think that the estimate of the jury of the value of the property was a fair one. The learned trial judge who saw the witnesses and heard them testify so thought and confirmed the verdict.

Is the amount of Abner Mellen's indebtedness to the plaintiff, as found by the jury, sustained by the evidence? It was proved beyond dispute, and partly by witnesses called by the defendants, that the plaintiff, for several years prior to the conveyances, was in the receipt of a considerable income from her own estate. The amount of her income was established by checks for dividends due her on shares which she held in various corporations. These checks were produced and are a part of this record. That she was the

FIRST·DEPARTMENT, OCTOBER TERM, 1893.            [Vol. 72.

owner of these dividends was conclusively established and was not questioned.   She testified, and in this she was supported by the testimony of others, that many of these checks were turned over to the firm of Mellen & Co., of which her husband was a member, and that others were turned over to her husband, or applied in payment of the expenses of the family.   It is true, as the learned counsel for the appellants claims, that as to a few of these checks the testimony given by the plaintiff conflicts with that given by her husband, but in not very important particulars.   This we do not regard as singular, or as evidence of perjury or intended fraud on the part of either.   There were a great number of these checks received from time to time during several years, and it would be most remarkable if both should agree as to when and how every one was turned over and the avails applied.   The disagreements pointed out in the brief of the counsel are of a nature that tend to show that the husband and wife had not agreed upon a statement of what should be testified to by each to support the plaintiff's case.   We do not think that we should be justified in holding, contrary to the verdict of the jury and confirmed by the judge who heard the case, that the jury should have found that the plaintiff and her husband testified falsely in respect to the use that was made of those various checks.   Had there been doubt about the fact that the plaintiff actually possessed these moneys, a different question would be presented.   We are of the opinion that the evidence is quite sufficient to support the finding of the jury that those various checks were turned over or applied for the benefit of the plaintiff's husband as testified to by them.   Mellen's indebtedness for the sum represented by those checks having been established, was the jury justified in including in the sums of the indebtedness, compound interest ?   An executory agreement between debtor and creditor that compound interest shall be paid, cannot be enforced by the creditor.   But if the interest be added to the principal and a new security given, it is valid and enforcible against the debtor, or a debtor may, in settling the claim, pay compound interest, and if not done with intent to defraud creditors, no advantage can be taken of it by them.

From 1870 to January 20, 1885, the firm of Mellen & Co. was composed of Abner Mellen, Sr., owning one-half interest, Abner Mellen, Jr., owning three-eighths interest and John B. Taylor, own-

ing one-eighth interest. On the date last mentioned, Taylor sold out his interest in the firm and retired. He was called by the defendants and testified that on the date of his withdrawal from the firm, Abner Mellen, Jr., was indebted to the firm in the sum of $77,000 for which the nine notes were given, and that he (Taylor) was indebted to the firm in upwards of $4,000, for which he gave seven notes, and that all of these notes were taken by the father. When Taylor withdrew the remaining members of the firm assumed all of its liabilities. The firm was continued by the father and son under the same firm name until April 30, 1885, when the father transferred his interest to the son, who agreed to pay all of the debts of the firm, and the son continued the business in his own name until May, 1888.

Campbell, who was called by the defendants, testified that he was the bookkeeper of Mellen & Co. and Abner Mellen, Jr., from April 10, 1881, to December 31, 1887, and that during that time it was the custom of the firm at the end of each calendar year to credit Mrs. Mellen with interest on all sums of money which she had advanced during the year, and so form a new principal for the next year.

Mellen testified in his deposition that it was agreed by the firm and by him that his wife should be credited with such sums as she advanced to the firm when advanced, and that interest should be allowed on each item until the close of the year, and then add the interest to the account and form a new principal. There is no evidence in the case that tends to contradict this, but the books of the firm and of Abner Mellen, Jr., show that that practice prevailed for several years. Such being the agreement, the creditors of Abner Mellen cannot complain that he fulfilled the agreement by making a conveyance of his property. The fact that part of the consideration for the conveyance by Abner Mellen to the plaintiff was for compound interest allowed pursuant to a previous agreement and practice between them, is no ground for setting aside the deed as fraudulent. A failing debtor may pay or secure to be paid a debt barred by the Statute of Limitations, or one which he may defend as usurious ; or if he has agreed to pay interest upon unpaid interest he may pay or secure its payment, and if done in good faith, the payment made or security taken cannot be set aside by his creditors.

The amount of the husband's indebtedness to the wife was a question of fact for the jury, and the evidence is sufficient to sustain their finding.

The jury found that the father in his lifetime surrendered to the son the nine notes for $77,000. Neither the existence nor the amount of this debt was an issue of fact on which the decision turned, but the amount of Abner Mellen's liabilities to others was competent as bearing upon the question of the intent with which the conveyance to the plaintiff was made. The transfer to her having been found to have been made in good faith and for a sufficient consideration, the fact that he owed his father's estate $77,000 is not sufficient to justify setting aside the conveyance as fraudulent. The money arising from the sale under the interlocutory judgment has been deposited with a trust company, subject to the order of the court, and if it shall be determined in future proceedings that the estate of Abner Mellen, Sr., has a claim against the plaintiff's husband which should diminish his share in his father's estate it can be adjusted by an appropriate direction.

The view we have taken of the questions hereinbefore discussed renders it unnecessary to determine whether a judgment setting aside the conveyances as fraudulent could have been rendered in this action without making the assignee or heirs at law of Abner Mellen parties.

By an order made by this court in this case the referee appointed by the judgment to sell the property has been directed to deposit the five-sixteenths of the avails arising from the sale, and claimed by the plaintiff, with a trust company, to await the final determination of the question, what liens existed on this share which are prior to the plaintiff's claim? By this order the subject of the litigation is the money instead of the land.

We could stop the discussion at this point were it not for the fact that it may hereafter be claimed in behalf of the plaintiff that, by the general verdict and the thirty-second and thirty-third findings of the court, it is established that Abner Mellen, in his lifetime, surrendered his claims against his son to him. As we have before stated, this was not an issue in the case, but a mere incidental fact bearing on the real issue, and it has been so held by this court (*In re Mellen's Estate*, 50 N. Y. St. Repr. 750; 21 N. Y. Supp. 811.)

The thirty-second and thirty-third findings of fact cannot, in the face of the written admissions of Abner Mellen, Jr., and the other evidence which shows that the notes were uncanceled and in the possession of his father at his death, be sustained, but must be set aside together with the general verdict in so far as it can be deemed to sustain these findings.

Whether Abner Mellen, Jr., was or was not indebted to his father's estate could not be determined in this action without the presence of his administratrix in her representative capacity as a party. It is usual to determine the existence of liens on the shares of tenants in common by a reference, and we think that the clauses in the final and interlocutory judgment which directs the referee to pay to the plaintiff five-sixteenths of the avails of the sale, should be reversed and her interest be directed to be paid into a trust company to await the determination of what, if any, liens existed on her share, and that any party to this action be given leave to apply to bring in any such parties as may be necessary to have determined what liens exist, their amount and whether prior or subsequent to the claim of the plaintiff, and that a reference should be ordered for the purpose. of determining this question. Several exceptions to the reception and exclusion of evidence are discussed in the brief of the learned counsel for the appellant, some of which might be regarded as sufficient to require a new trial in a legal action; but this is an equitable one, and we think that substantial justice does not require that a new trial be granted, and that these exceptions should be disregarded pursuant to section 1003, Code of Civil Procedure.

The judgments should be modified by reversing the provisions holding that the plaintiff is entitled to five-sixteenths of the avails of the sale, free from any lien, and also those provisions directing the avails to be paid directly to her, and, as so modified, the judgments should be affirmed, without costs to either party.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgments modified as directed in opinion, and, as modified, affirmed, without costs to either party.