[No. 11749. In Bank. — July 5, 1889.]

## ISAAC GOLDTREE ET AL., RESPONDENTS, v. WILLIAM THOMPSON ET AL., APPELLANTS.

WILL — TRUST — CONSTRUCTION — DEVISE OF INCOME — RESIDUARY ESTATE. Where a will devises the testator's estate in trust to be invested, and to pay the income to certain persons named in certain proportions during their lives, and to their surviving husbands or widows until remarriage, and after that event, the same proportions in trust in equal shares for their children by the first marriage who shall attain the age of twenty-one years or marry, and during the minority of any legatee, to apply the income of their respective shares toward his or her support or advancement in the world, the life devisees take only the income, and no part of the *corpus* of the residuary estate, but the *corpus* of the trust property will pass to the children, to be paid over to them in the proportions specified when they arrive at majority or marry, there being no provision for a continuance of the trust thereafter.

ID. — PERPETUITY — SUSPENSION OF POWER OF ALIENATION — ACCUMULATIONS — INTEREST OF AFTER-BORN CHILD. — Such will does not create a perpetuity, or unlawfully suspend the power of alienation, since all the persons beneficially interested in the will were living at the death of the testator (save one child, who died a minor and unmarried), and the accumulations were lawful, being only for the benefit of minors, to end with their minority or marriage. Accumulations of income on an invested fund are not forbidden because they tend to a perpetuity. A child born after the death of the testator, who is specified as one of the legatees, having come into existence during the life of its father, one of the lives in being at the creation of the interest, would take an interest under the will vested in right when born, and in possession contingent on attaining majority or marriage, within twenty-one years after its father's death, which event would not render the interest devised void.

ID. — VALIDITY OF TRUST. — A devise of the residue of the personal estate of a testator to certain trustees in trust to be invested, and to divide the accumulations of income thereof in certain proportion to certain persons named during life, and to the surviving husband or widow of each until remarriage, and to their children during minority or until marriage, and to pay to such children the residuum of the estate in certain proportions, when attaining age or marrying, creates a valid trust if accepted by the trustees, under the provisions of sections 2221 and 2222 of the Civil Code.

APPEAL from a judgment of the Superior Court of San Luis Obispo County.

The facts are stated in the opinion of the court.

*Graves, Turner & Graves,* for Appellants.

The will is void because by possibility suspending the absolute power of alienation beyond lives in being. (Civ. Code, secs. 715, 716, 771; 2 Washburn on Real Property, 3d ed., 653; Gray on Perpetuities, secs. 200, 201, 214, 215; 1 Jarman on Wills, 5th ed., pp. 254, 266, 273, 288, 297; *Estate of Hinckley,* 58 Cal. 457; *Williams's Executor v. Williams,* 73 Cal. 99; *Hawley* v. *James,* 16 Wend. 120; *Gott* v. *Cook,* 7 Paige, 540; *Boynton* v. *Hoyt,* 1 Denio, 53; *Kane* v. *Gott,* 24 Wend. 641; 35 Am. Dec. 641; *Jennings* v. *Jennings,* 7 N. Y. 547; *Amory* v. *Lord,* 9 N. Y. 415; *Thompson* v. *Carmichael,* 1 Sand. 387; *Wells* v. *Wells,* 88 N. Y. 331.) Posthumous children are included in a devise to children, when the distribution of funds is postponed or there is an intervening estate. (*Jenkins* v. *Freyer,* 4 Paige, 46; *Hannan* v. *Osborn,* 4 Paige, 336; *Myers* v. *Myers,* 2 McCord's Ch. 256; 16 Am. Dec. 648; *Lorillard* v. *Coster,* 5 Paige, 185; *Fosdick* v. *Fosdick,* 6 Allen, 41; *Biggs* v. *McCarthy,* 86 Ind. 352; 44 Am. Rep. 320; 2 Williams on Executors, Perkins's ed., 1171, and note.) There is no devise of the residuum, there being only clear and unmistakable terms of devise of the income and accumulations of the residuum. (*Peterson* v. *Ellis,* 11 Wend. 298; *Reed* v. *Head,* 6 Allen, 174; *Wells* v. *Wells,* 88 N. Y. 330; *Bentley* v. *Kaufman,* 5 Rep. 406.)

*J. M. Wilcoxon,* and *W. H. Spencer,* for the trustees, respondents, also insisted that the will creates a perpetuity.

*William Shipsey,* for the minors, respondents, insisted to the contrary; citing Civ. Code, secs. 1337, 1339, 1341, and Jarman on Wills, p. 160. He also cited the cases referred to in the opinion, in support of the proposition that the bequest to the minors carried with it the *corpus* of the estate.

THORNTON, J.—This action was brought by the plaintiffs as trustees appointed by the will of Jonathan Thompson to obtain for their direction a construction of certain clauses in it. The property had been distributed to the trustees by a decree of the proper court, and they apply to this court for the purpose above stated. The legatees and devisees under the will are made parties to the action, and all desire construction of the clauses asked for.

The clauses of the will referred to relate to the disposition of the residuary estate, which is done by the following words:—

"The residue of my personal estate (subject to the payment of my just debts, funeral and testamentary expenses) I give to my said trustees upon trust to invest the same (after converting such parts thereof into money that require conversion) and all accumulations thereof as hereinafter named, and divide and pay the income thereof as it becomes due and received in manner following; namely, as to one fourth part thereof, to my niece, Jane Allison, during her life, and after her death, then in trust for her children, in equal shares (if more than one), who shall attain twenty-one years of age or marry; as to one other fourth part thereof, to my niece, Margaret Chappelhow, during her life, and after her decease, then to her husband, John Chappelhow (if he be living), during such time as he shall remain a

bachelor, and after that event, then in trust for her child or children, in equal shares (if more than one), who shall attain twenty-one years of age or marry; as to one other fourth part thereof, to my nephew, James Thompson (now in California), during his life, and after his decease, then to his present wife (if she be then living), during such time as she shall remain his widow, and after that event, then in trust for his child or children by her, in equal shares (if more than one), who shall attain the age of twenty-one years or marry; and as to the remaining fourth part thereof, to my aforesaid nephew, John Thompson, during his life, and after his decease, then to his present wife (if she be then living) during her widowhood, and after that event, then in trust for his child or children by her, in equal shares (if more than one), who shall twenty-one years of age or marry."

Jane Allison and Margaret Chappelhow, the devisees named in the will, are the nieces of the testator, and the other devisees named, James Thompson and John Thompson, were his nephews. They were all living at the death of the testator, as were the children, except one born subsequently, mentioned hereinafter.

There is no doubt that one fourth of the income derived from the residuary estate is to be paid to Jane Allison during her life, and a like proportion each to Margaret Chappelhow, James Thompson, and John Thompson during their several lives, and after their deaths, to the surviving husbands of Jane Allison and Margaret Chappelhow, and to the surviving widows of James and John Thompson during the period mentioned in the will. That is to say, it is clear that the income only, in the proportions mentioned, is to be paid to the surviving husbands and widows of the nephews and nieces above named during the periods of their widowerhood or widowhood, and they get no portion of the *corpus* of the residuary estate.

The question debated and to be decided is, whether the children of the parties mentioned above and referred to in the will take the *corpus* of the property left in trust, or the revenue only.

We are of opinion that the direction of the testator was, that the *corpus* of the trust property was to pass to the children above named, and to be paid over to them in the proportions above stated, when they attain the age of twenty-one years or marry. This, in our judgment, is what is declared in the will. It is evident that the testator intended to distribute by will all the residuary estate. The whole residuum is bequeathed to the trustees in trust,— 1. To pay over the income to the parties mentioned during the periods prescribed; and whenever such proportions cease, then, 2. "In trust (not to pay over) for his or her children," that is, that the residuum in the proportions aforesaid is to be held in trust for the children referred to. The bequests to children are expressed in precise terms, and have the same meaning, which is indicated above. We think this clearly appears from the clause in the will in which he empowers the trustees "during the minority of any legatee to apply the income of their respective shares toward his or her support or advancement in the world."

The respective shares here must mean shares of the residuary estate itself. If the respective shares only meant their respective shares in the income, then the authority conferred on the trustees would be to apply the revenue derived from their shares of the income toward his or her support and advancement. This would be too small a sum to be of any advantage as an advancement in the world. We cannot think that such could be the meaning or intent of the testator. This authority was intended to empower the trustees, after the death of the nephews and nieces mentioned in the will, and the contingency had occurred when they no longer had to pay over the income, or any portion of it, to a sur-

viving husband or wife of the nephews or nieces, to use the income for the support or advancement of the children named during their minority, or until they had married, having regard in each case to the proportions in which the property was bequeathed,—that is, one fourth of the residuary estate to the children, respectively, of each of the nephews and nieces deceased.

This conclusion is sustained by the fact, patent on the face of the will, that no provision is made for the continuance of the trust, after the children mentioned marry or attain twenty-one years of age. We think the provision in the will for compensation of fifteen pounds per annum to each trustee during the continuance of the trust named in the will clearly shows that the intent of the testator was that the trust should last no longer than the period above indicated by the will, and that their continuance should not be for an undefined period. The trust then coming to an end, the *corpus* of the residuary estate is to be held for the *cestui que trusten* in the proportions above referred to.

The above is in accordance with decided cases. See, on this subject, the following cases cited in brief on behalf of the minor respondents: *Earl* v. *Grim,* 1 Johns. Ch. 494; *Reed* v. *Reed,* 9 Mass. 272; *Paterson* v. *Ellis,* 11 Wend. 298, 559; *Fox* v. *Phelps,* 17 Wend. 393, 402; *Earle's Appeal,* 75 Pa. St. 119; *Ogden's Appeal,* 20 Pa. St. 501; *Anderson* v. *Greble,* 1 Ashm. 136; *Anderson* v. *Boyd,* 5 Greenl. 119; 4 Kent's Com. 563; *Parks* v. *Parks,* 9 Paige, 107; *Smith* v. *Post,* 2 Edw. Ch. 523; *Cook* v. *Husband,* 11 Md. 492; *Craig* v. *Craig,* 3 Barb. Ch. 76.

A point is made that these trusts as to the children create a perpetuity, and are in violation of the statute, and are void. It is not clearly pointed out by counsel how this result is brought about.

"The rule against perpetuities," says Mr. Perry in his work on trusts, "has been gradually established by judicial decisions, and affords a most notable instance of

the nice adoption of the principles of common law to the decision of a question which requires at once a due regard for the rights of persons and property and a careful consideration of those larger principles of public policy so essential to the welfare of communities and states; for public policy is opposed to perpetual settlement of property in families in such manner that it is forever inalienable, or inalienable so long as there may be a person to take answering the designation of some testator who may have died generations before."

The same writer proceeds to point out the various steps or stages of adjudication by which the rule was settled. They are thus stated: "The first stand of the judges was to allow only those limitations which would take effect at the end of one life from the death of the testator. This was afterward modified to include two or more lives in being, and running at the same time, ' or where the candles are all burning at once'; for it is plain that such a space of time is only one life in being,—that of the longest liver. The next step was much debated; but it was finally settled that an executory devise might be made to vest at the end of lives in being and twenty-one years after, to allow for infancy of the next taker, who by reason of infancy could not alienate the estate. The statute of 10 & 11 Wm. III., c. 16, having provided that children *en ventre sa mere* born after their father's death should for the purposes of the limitations of estates be deemed to have been born in his lifetime, a further extension of nine or ten months was allowed for the period of gestation. The next step was to allow a period of nine months for gestation at the beginning of the term, as the life in being during which the term would run might be that of a child *en ventre sa mere*. . . . . It was finally determined that twenty-one years might be allowed as a term in gross, without reference to the infancy of any person, but that the period of nine months for gestation should be allowed in cases only where the

gestation had commenced of some person who, if born, would take an interest in the estate. By such steps, by imperceptible degrees, and after two centuries of doubt and litigation, and unaided by legislation, the judges framed and completed *the great rule against perpetuities.* Thus all future estates which arise by will of executory devise, conditional limitation, or shifting and springing uses, must vest within a life or lives in being at the death of the testator and twenty-one years; and in case the person in whom the estate or interest should then vest is *en ventre sa mere,* nine months more will be allowed; and all estates created as aforesaid, and so limited that they may not vest within that time, are void." (Perry on Trusts, secs. 379, 380.)

This rule, styled by Mr. Perry "the great rule" against perpetuities, was worked out on the principles of the common law. That system did not permit a grant of property in fee-simple to be made with an entire restraint of alienation. The right of alienation was incident to the estate, and the restriction was void as repugnant to the code. (1 Washburn on Peal Property, 85.) But a restriction for a reasonable time was held valid (Id.), and the time fixed as a reasonable time was as stated above. The same rule was established by many cases as the common law in regard to estates so settled, the income to be invested whether for adults or infants.

One of the most remarkable of these cases was that presented in the will of Peter Thellusson, who died in 1797. This came before the court of chancery in 1798.

A brief reference will be made to the case in which the trusts of this will were presented for judicial consideration (in *Thellusson* v. *Woodford,* 4 Ves. 227, and 11 Ves. 112).

In referring to the case (*Thellusson* v. *Woodford*), Chancellor Kent thus states it, and what was held in relation to it: —

" The devise in that case was, that all the real and personal estate of the testator should be converted into one common fund, to be vested in trustees in fee for the rents and profits to accumulate during all the lives of all the testator's sons, and of all the testator's grandsons born in his lifetime and living at his death, or then *in ventre sa mere*, and their issue, to receive the profits during all that time in trust, and to invest them from time to time in other real estates, and thus be adding income to principal.    After the death of the last survivor of all the enumerated descendants, the estates were to be conveyed to those branches of the respective families of the sons who, at the end of the period, should answer the description of the heirs male of the respective bodies of the sons.    The testator's object was to protract the power of alienation by taking the lives of persons who were mere nominees without any corresponding interest.    The trusts created by the Thellusson will were held valid by the court of chancery, and the decree was affirmed in the house of lords.    The property was thus tied up from alienation and from enjoyment for three generations; and when the period of distribution shall arrive, the accumulated increase of the estate will be enormous."    (4 Kent's Com. 285.)

In a note to the text of Kent it is stated: "The testator died in 1797.    He left three sons and three daughters, and half a million sterling, on an accumulating fund. If the limitation should extend to upwards of one hundred years, as it may, the property will have amounted to upwards of one hundred millions sterling."

The limitations of this will brought about the enactment of the statute 39 and 40 George III., chapter 98, usually known as the Thellusson act.    On this act the statute of New York (1 Rev. Stats. 773) is founded, and the statute of California, hereafter to be referred to, followed the New York act.

All of those acts allow accumulations of the income of

property for the benefit of infants during their minority. (See 4 Kent's Com. 286, 287.)

The legislature of this state has embodied the rule as stated in the extract above given from Perry on Trusts, as will be seen by an examination of the provisions of the code in reference to future interests.

The absolute power of alienation cannot be suspended by any limitation or condition whatever for a longer period than during the continuance of the lives of persons in being at the creation of the limitation or condition, except in a single case mentioned in section 772 of the Civil Code, which is not material in this case. (Civ. Code, sec. 715.)

The children here take a future interest, defined to be an interest which entitles the owner to the possession of the property only at a future period. (Civ. Code, sec. 690.) This interest is created by will, and in such case the death of the testator is to be deemed or taken as the time of the creation of the interest. (Civ. Code, sec. 749.) As a future interest, it is declared by section 716 of the Civil Code that it is void in its creation if by any possibility it may suspend the absolute power of alienation for a longer period than is prescribed in this chapter, i. e., for a longer time than during the continuance of the lives of persons in being at the creation of such interest. This power of alienation is suspended when there are no persons in being by whom an absolute interest in possession can be conveyed. (Civ. Code, sec. 716.)

The subject of the trust herein is the residuum of the personal estate. "The residuum of my personal estate" is given by the will in trust to the trustees. If there is any violation of the statute, it must be in regard to the personal estate and the accumulations thereof. The power of alienation is not suspended for a period beyond that allowed by statute. All the persons beneficially interested in the will were living at the death of the tes-

tator. No reference is made here to the child of John Thompson born after the death of the testator, and who died a minor and unmarried.

As to such accumulations, the code, after providing that "dispositions of the income of property to accrue and to be received at any time subsequent to the execution of the instrument creating such disposition" are governed by the rules prescribed in title 2, part 1, of division 2 of the Civil Code (Civ. Code, sec. 722), provides that accumulations of the income are lawful and allowed by the code which are in accordance with section 724 of the Civil Code, which is as follows:—

"An accumulation of the income of property for the benefit of one or more persons may be directed by any will or transfer in writing sufficient to pass the property out of which the fund is to arise, as follows:—

" 1. If such accumulation is directed to commence on the creation of the interest out of which the income is to arise, it must be made for the benefit of one or more minors then in being, and terminate at the expiration of their minority; or,

"2. If such accumulation is directed to commence at any time subsequent to the creation of the interest out of which the income is to arise, it must commence within the time in this title permitted for the vesting of future interests, and during the minority of the beneficiaries, and terminate at the expiration of such minority."

The accumulations are only for the benefit of minors who are in being at the death of the testator. One of the children of Margaret Chappelhow and John Chappelhow, viz., Esther Hannah, is an infant. Two of the children of Jane Allison and Giblum Allison are minors. John Thompson's children are minors. James Thompson had no children. The other children have reached their majority. If on the death of the mother or father of the children, and the death or marrying of the surviving wife left a widow, or the surviving

husband left a widower, each one of the children mentioned *who is married or of age* becomes entitled to his or her share. If there is any income of such share received afterward, it goes to such married or adult child as accrued on his share which has already vested in possession. It is clear from the will that all the income is to be paid over, and not accumulated at all during the lives of the nephews and nieces, and during the lives of the surviving husbands and wives referred to in the will as long as they remain unmarried. After the foregoing events have occurred, the shares of the *corpus* of the fund have to be paid over to the married or adult children of the parents mentioned in the will, with the income accruing on their shares as a part of the share, such income, if any, having accrued on the share of such adult or minor child.

The only accumulation is then for the minors, and such accumulation ends with their minority or marrying. When majority is reached, or marriage occurs before, each share vests, with its accumulation of the income, in such minor children.

It may be remarked that the accumulations of income on an invested fund are not forbidden because they tend to a perpetuity. That such accumulations were for adults did not create or tend to a perpetuity was held in *Thellusson* v. *Woodford,* above cited. (See remarks of Lord Elden on page 14 of 11 Vesey.) The prohibition of accumulations longer than the minority of the takers of the interest was made to prevent an unfeeling and selfish testator from so devising his estate as to make persons rich in the distant future, to the detriment of those during the period of limitation who had better claims on his bounty. The latter had to live in poverty in order that their children or grandchildren might be made rich at a distant future day.

As to the after-born child of John Thompson, she came into existence during her father's life, one of the

lives in being at the creation of the interest. She would take an interest under the will, as she was one of the class mentioned in it, to wit, the children of John Thompson (Civ. Code, sec. 1337), vested in right when she was born, and in possession contingent on her attaining the required age or marrying. If this interest could ever vest in possession, it must have vested within twenty-one years after her father's death. Such an event did not render the interest devised void.

No question is made as to the validity of the trust created by the will as a trust. The only objection made to it has been considered above. But clearly such a trust is valid. (See Civ. Code, secs. 2221, 2222.) The trust is definite in every respect required by statute (see sections above cited), and the trustees here have accepted the trust.

The foregoing disposes of all the questions raised on which the judgment of this court is sought.

We find no error in the judgment of the court below, and it is affirmed.

So ordered.

MCFARLAND, J., WORKS, J., PATERSON, J., and SHARP-STEIN, J., concurred.