(53 Misc. Rep. 496)

### BASCOM et al. v. WEED et al.

#### (Supreme Court, Trial Term, Essex County. March, 1907.)

1. WILLS—CONSTRUCTION—VESTED OR CONTINGENT ESTATES.

Where a will bequeathed and devised the testator's residuary estate to trustees during the life of his four children, with power of sale, and further granted to each child by separate paragraphs of the will one-fourth of the net income of his estate for life, the fourth of the estate to be paid over on his death, or at the majority of his or her children, to such children, and, in case he or she should die without issue living, the share to be divided among the testator's other children or their descendants, the title to the trust property did not vest in the testator's children upon his death, but the descendants of each child took a contingent interest, subject to be defeated by death before the death of the life beneficiary.

2. PERPETUITIES—CREATION OF CONTINGENT ESTATES.

There was no violation of the statute concerning the suspension of the power of alienation; the will creating four separate trusts, each for the period of one life in being.

3. SAME—SUSPENSION OF ABSOLUTE POWER OF ALIENATION—REAL PROPERTY.

A provision in the will that, if any of the descendants of a testator's child are minors at the death of the child, the trustees holding the estate for the life of the child shall pay only the income to such descendants until they reach majority, does not prevent the vesting of the interest in them, and hence does not violate the statute as to suspension of alienation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perpetuities, § 46.]

4. TRUSTS—CONSTRUCTION—ESTATE OF TRUSTEE—STATUTORY PROVISIONS.

The grant to the trustees "for the uses and purposes" therein named did not vest an absolute title in them, but fell within Real Property Law, Laws 1896, p. 571, c. 547, § 76, stating the purposes for which a trust may be created, and sections 80, 81 (page 572), providing that legal title shall vest in the trustee, except that the person creating the trust may create a legal interest in the estate in another, subject to the execution of the trust.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, §§ 177–179.]

5. CONVERSION—DIRECTIONS IN WILL—EFFECT.

A discretionary power of sale of realty given by a will to trustees, and a direction to "pay over" the trust estate to the children of the life beneficiaries, do not constitute an equitable conversion of the estate into personalty.

6. WILLS—CONSTRUCTION—VESTED OR CONTINGENT ESTATES.

Where the trustees do not exercise their power of sale as to the share of a daughter of the testator, her children become immediately vested with title to the share on her death, and, being of age, are entitled to possession as tenants in common with the other children of the testator, and are entitled to a partition of their share from the others.

7. SAME—NATURE OF TESTAMENTARY POWER—CREATION OF CONTINGENT ESTATES.

Real Property Law, Laws 1896, p. 567, c. 547, § 49, making expectant estates descendible, devisable, and alienable in the same manner as estates in possession, does not prevent a testator from making an expectant estate subject to be defeated by the exercise of a power of the sale given to trustees, which must be exercised before the owner of the expectant estate becomes vested with absolute title.

8. TRUSTS—POWERS OF TRUSTEES—CO-TRUSTEES.

A testator may empower trustees to act by a majority thereof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 346.]

9. SAME—APPOINTMENT AND TENURE OF TRUSTEES—REMOVAL.

Where one of several trustees is adjudged a lunatic, his lunacy is not the same as death; but it is the duty of his co-trustees to apply for his removal and the appointment of another trustee, as authorized by Real Property Law, Laws 1896, p. 576, c. 547, § 92, and Code Civ. Proc. §§ 2817, 2818.

Action by Dorus Bascom and Herbert Wheeler, as executors and trustees under the will of George C. Weed, and the said Wheeler individually, against John S. Weed and others.

Smith & Wickes, for plaintiffs.
H. D. Hoffnagle, for defendants.

SPENCER, J. This action is to construe the will of George C. Weed, late of the town of Ticonderoga, N. Y. The testator died in January, 1902, leaving him surviving three sons and one daughter. By his will he bequeathed and devised all his residuary estate, including real and personal property, to four trustees (afterward by codicil increased to five and substitutions made) in trust, in the following terms:

"All the residue and remainder of my property, real and personal, which I shall own at my death, I give, devise, and bequeath unto David W. Easton, Dorus C. Bascom, John S. Weed, and Philip T. Weed (all residing in Ticonderoga) and to the survivors of them, who are hereby and herein appointed to be executors and trustees under this my last will and testament; in trust, however, for the uses and purposes herein specified, and I empower and direct them, or the majority of them, to settle, compound, and compromise and receive all debts, claims, and demands due to me, and I give them power to sell my real and personal property and convert the same into money, in the discretion of them or a majority of them, and I direct them to invest such money in productive real estate, or good interest-paying securities, when in their judgment it shall be for the interest of my estate and the beneficiaries named in this will so to do; and they are to let said real estate, and collect the rents thereof, and interest upon all securities in their hands. And they are to invest and keep invested all the principal of all moneys belonging to my estate, at interest, to the best of their judgment, and to take such securities for the payment of money loaned or invested, as they shall in their judgment deem good and ample to secure such loans and investments.

"After paying all necessary expenses and outgoes pertaining to the said property, such as taxes, insurance, repairs, and other expenses, if any, I direct my said executors and trustees to dispose of my property as follows, to wit: [Here follow four separate items, one for each of his four children,

making substantially the same directions as to each of the four shares, but by the use of a variety of expressions. The following will serve as an example:]

"I will and direct that the net income of one other fourth part and share of my estate be paid annually (or oftener in the discretion of my executors and trustees) by my said executors and trustees, to my son, Philip T. Weed, so long as he shall live for his support and maintenance.

"Upon the death of my said son, Philip T. Weed, they shall pay over the said one-fourth part of my estate to the lawful children of the body of said Philip T. Weed then surviving, and to the children or descendants of any deceased child of him then surviving, share and share alike, to their own use forever, the children or descendants of any such deceased child, however, to together take only what their parent would have taken if living at the death of said Philip T. Weed. Should any of said beneficiaries be infants at that time, then their portion shall be paid to them as and when they shall severally reach the age of 21 years, the income meantime to go to their support severally.

"In case my said son, Philip T. Weed, shall die leaving no child of his body nor any descendants of any such child him surviving, then I give, devise, and bequeath the said one-fourth share of my estate (the income of which is hereinbefore devised for his support) unto my other children surviving at his decease and to the children or descendants of any child of mine then deceased, share and share alike, to their own use and benefit, the children or descendants of any such deceased child however, to take together only the portion which their parent would have taken, if living at the death of said Philip T. Weed. Should any of such beneficiaries be minors, then their portions shall be paid to them severally on their severally reaching the age of 21 years, the income meantime to go to the support of such minors severally."

At the time of his death, the testator possessed a considerable estate, mostly real property, and the residue, consisting of both, is now in the hands of the trustees substantially as it then existed. They have from time to time paid the income to the four children of the testator in equal shares. The necessity for a construction of the will is occasioned by the death of the testator's daughter and the claims of her children to receive their share of the estate.

The first question that arises is whether the devise to the trustees is in violation of the statute concerning the suspension of the power of alienation. In this connection it will not be necessary to consider whether there was by the terms of the will an equitable conversion of the real into personal, as in that event the change would not avoid the statute; for the proceeds of a sale would be tied up in the same manner, and be as fatal to the scheme as before. Chap. Susp. Alien. § 68. We may therefore consider the trust scheme of the testator as applicable alike to real and personal property, as the statute applies in equal terms to both.

It is clear that, if the will creates a single trust to continue during the lives of the testator's four children, such trust is invalid unless the title to the trust property, upon the death of the testator, vested immediately in the persons comprising the several classes to whom it is directed to be paid upon the death of each of his children. For reasons which will be stated later on, I am of the opinion that the title did not so vest, and therefore the determination of the legality of the trust must depend upon the question whether the testator intended one trust for the life of the four children or the creation of four separate

and distinct trusts, one each during the life of each of his children. Even a cursory reading of the will leaves upon the mind a strong impression that it was the master intention of the testator that the residue of his estate, forming the subject-matter of trust, should go to the descendants of his four children; each set of grandchildren to have an equal one-quarter of the property. There are some important differences in the language employed in the clauses affecting the different beneficiaries and legatees under each clause; but these differences do not in any degree dispel the impression that he intended to give to each of his children and its descendants equal portions of his estate, and that, upon the death of each, its descendants, if any, should become entitled immediately to that share. The same result follows in case one of the testator's children dies without descendants. The share does not mingle with the remaining shares, but goes directly to the surviving children of the testator, and, except in one instance, to the descendants of those who have died. The property belonging to such share in no event goes to or becomes a part of the other remaining shares. It is also apparent that the testator did not intend his trustees to make any physical separation or division of his estate into separate or independent parcels or funds. He contemplated the control and management of the property as an entirety so long as the same was practicable. The failure to authorize or direct a separation is significant. There is no reason why several distinct trusts may not hold property in common. For convenience of investment and to avoid loss by a forced sale, the funds may remain in solido while the interests therein are several. We find in the books numerous instances where separate and distinct trusts have held property in this manner. Manice v. Manice, 43 N. Y. 303; Savage v. Burnham, 17 N. Y. 561; Stevenson v. Lesley, 70 N. Y. 512; Matter of Verplanck, 91 N. Y. 439, 443; Vanderpoel v. Loew, 112 N. Y. 167, 19 N. E. 481.

As indicating the intention of the testator to create four separate trusts, rather than one, we note, in the several clauses where he provides for the payment of income to his four children, he directs there shall be paid to them the net income of one-fourth part or share of his estate, and not one-fourth part of the income of his estate. It is still more apparent when we consider the bequests to his grandchildren and the language he employs in describing the shares that shall go to them. In each instance he says, "they shall pay over the said one-fourth part of my estate," referring in each instance to the share which has produced the income given to their parent. And in instances where one of his children shall die without leaving issue the language to identify the share is still more definite. But the fact that the different trusts are made to terminate at different times, and that, upon the termination of each trust, the property does not go into or remain a part of the general fund, but is given directly to grandchildren, if such grandchildren there be, and, if none, devised equally to the testator's other children and their descendants, is sufficient, alone, in my opinion, to justify the conclusion that separate trusts were intended. This view, I think, finds support in the following decisions: Stevenson v. Lesley, 70 N. Y. 512; Vanderpoel v. Loew, 112 N. Y. 167, 19

N. E. 481. ·If this be so, then we have here the creation of four sep-
arate and distinct trusts, each for the period of one life in being.

But it may be said that each of these several trusts may continue dur-
ing the minority of any number of grandchildren, and, inasmuch as
a minority constitutes a life in contemplation of the statute, the pro-
visions of the will, even if construed as creating four trusts, are still
in violation of the statute. It is, no doubt, true that, if any of the
takers are minors at the time of the falling in of a life estate, the
trustees are required to hold possession of the shares of such minors
during their minorities respectively; but the provision in that regard
does not prevent a vesting of the title in such minors immediately upon
the death of the life beneficiary. Upon the death of their parent, they
each take a vested remainder in the share; the enjoyment of the
same being postponed until they arrive at majority. If I am correct in
this construction, then there is no violation of the statute in respect
to the suspension of the power of alienation, and the devise of the
residue to the trustees is valid.

The next question is as to the title which vested in the trustees and
the duration of the respective trusts. I think it is clear from the
language of the will that the testator did not intend to vest an absolute
title to the estate in the trustees. The grant is made "for the uses
and purposes" only as in the will specified. The power to sell is also
limited to the purposes of the trust to be exercised only upon the dis-
cretion of the trustees. Each trust falls strictly within the provi-
sions of section 76 of the real property law (Laws 1896, p. 571, c. 547),
and is legal. The provisions of the will, in respect to those who shall
take upon the falling in of the respective life estates, bring each grant
within the qualifications of section 80, made by section 81 of the same
statute. If this be so, then the devise to the trustees and the power
of sale given to them is limited to the purposes of each trust, and,
if exercised in respect to any one trust, must be so exercised before the
termination of such trust by the death of the life beneficiary, as the
property of each trust thereupon becomes vested in the persons belong-
ing to the class named in the devise.

But it is said that there has been an equitable conversion of the real
property into personalty by the terms of the will, and that the entire
estate is held by the trustees as such, and that, therefore, there has been
no vesting of title in the remaindermen, and none will ensue upon the
falling in of the life estates. In attempting this subject, we may, I
think, start out with the proposition firmly fixed in our minds that
the testator did not intend any arbitrary partition or disadvantageous
sale of his real property. His estate consisted mainly of that class,
and would not yield itself readily to such treatment. While he gives
to the trustees a naked power of sale, its exercise is lodged in their
discretion. While mere power of sale is not inconsistent with the
theory of equitable conversion, nevertheless, when, as here, the ex-
ercise of the power is lodged in the discretion of the trustees, the
inference is against the view that the testator intended such a conver-
sion. The usefulness of such power is apparent in the management of
any estate consisting largely of real property, and carries with it no
inference that the testator intended the conversion of all his real prop-

erty into personalty. Neither is there any direction or express authority lodged in the trustees to make division or partition of the estate between the several trusts created, or between any of the devisees or legatees.

Attention is called to the words "pay over" employed in each of the clauses which provides for the passing of each trust estate to the children of the life beneficiary. The use of these words in that connection should have no more significance than the use of the word "take," employed in the same connection, and the expression "shall go to and be divided," when employed in connection with the passing of the property to his other surviving children in case one shall die without issue. In the clause applicable to that class in the case of his son Philip the testator makes use of the expression: "I give, devise, and bequeath the said one-fourth share." From the use of these various forms of expression it should not be inferred that the testator intended any other or different method or result in the one case than in the other. His lack of appreciation of the legal significance of the various terms he employs is too apparent to be mistaken, and finds striking illustration in his use of the word "devise" as describing the gifts of income to his several children for their support. The intent of the testator must be gleaned from the entire will. As already stated, his master intent was to deal alike with each class of children and grandchildren; and the court, in searching for other intent, should not lay stress upon incidental and obvious lapses in the employment of terms. For the word "pay," as employed, is a gross misnomer in any view which may be taken. It has no application, except in the discharge of debt or the fulfillment of promise, and in no event may the rights and obligations of the trustees and the legatees or devisees in respect to each other be so regarded. To infer from its use that the bequest or devise to which it refers must ex necessitate be discharged by money would be to magnify the importance of a single word and lose sight of the intent of the testator, as disclosed by the general trend of the will and the purposes sought to be accomplished. If strict construction must be given to these particular expressions, then why not to others of a similar kind? But to do so would throw the entire scheme of the will into confusion and necessitate a different result in respect to each of the clauses, as in no two instances may they be said to be expressed in the same terms. It is true the word "pay" appears only in the clauses relating to children of a deceased life beneficiary taking upon the death of their parent, and is not found in instances where they take upon the death of an uncle or aunt; but I think it is not permissible to infer that the testator intended to make any distinction by the use of the different terms. It would call for a sale and conversion into money of the share in case the life beneficiary died with issue, but not so in case he died without issue. Another instance, indicating the improbability of his intending such a distinction, we may note in the clause concerning the share devoted to the support of his son Philip. He employs the expression "pay over" as to the children of Philip, the terms "devise" and "bequeath" as to his own children, and the word "paid" as to his other grandchildren. From considerations such as these, and others which

might be mentioned, I am of the opinion that the use of the words "pay over" does not necessitate a construction to the effect that the trust estate must be converted into money by the trustees.

If the foregoing conclusions find justification in the facts, then there is no equitable conversion of the real property into personalty by the terms of the will. To accomplish such a result, the provisions of the will must be of such a character as to leave no doubt of the testator's intent. Hobson v. Hale, 95 N. Y. 588. An equitable conversion may not be declared unless the manifest and declared purposes of the testator cannot be accomplished otherwise; for equity will never presume a conversion unless it is demanded to accomplish the lawful purposes expressed in the will. Chamberlain v. Taylor, 105 N. Y. 185, 11 N. E. 625. It must clearly appear that the purpose of the testator cannot be carried into effect in any other way. Fraser v. United Presb. Church, 124 N. Y. 479, 26 N. E. 1034. In the absence of an express direction to sell, one may not be implied unless the design and purpose of the testator is unequivocal and the implications so strong as to leave no substantial doubt; and so, unless the exercise of the power is rendered necessary and essential by the scope of the will, the authority is simply discretionary and does not work a conversion. Scholle v. Scholle, 113 N. Y. 261, 21 N. E. 84. I fail to find any purpose of the testator expressed in the will that cannot be accomplished without resort to the theory of conversion. His foremost intention was that the income of the residue of his estate should go to the support of his four children during their lives, and at their death to their children, respectively. All else is incidental. As to the manner by which the property should be partitioned, he does not say, but leaves that to be accomplished in the ordinary way and by the well-established methods.

In connection with this subject it is important to consider when the title vests in the respective devisees and legatees. Although there is no general devise or bequest to the persons who are to take upon the death of each life beneficiary, they are designated in a class, and the words employed are sufficient to constitute both a devise and bequest. 2 Jarman, Wills, c. 22, p. 334. And when, as here, the direction is to pay to a class, only those persons who are members of the class at the time fixed for the payment take, and their interests do not vest until that time. Geisse v. Bunce, 23 App. Div. 289, 48 N. Y. Supp. 249; Matter of Crane, 164 N. Y. 71, 58 N. E. 47. In the case at bar it cannot be said that, prior to the death of a life beneficiary, any person is in being who, upon such death, would have an immediate right to the possession of the share held for the support of such life beneficiary. In case all the life beneficiaries should die at the same time, leaving no descendants, the testator, as to the property of all the trusts, would have died intestate. It is true that, if the deaths of the life beneficiaries are in succession, each trust will terminate upon that event; but, in case the last one shall die without children or descendant of other life beneficiaries him surviving, the same result would follow as above. In order to take, the person taking must survive the life beneficiary. Before that event actually takes place, it is impossible to say who of the class will survive. I think, therefore, that title did not vest in the legatees or devisees upon the death of the testator, but

that the members of each class took a future contingent estate in the property of the particular share, subject to be defeated by death before the death of the life beneficiary and also subject to the exercise of the power of sale by the trustees. Warner v. Durant, 76 N. Y. 133; Smith v. Edwards, 88 N. Y. 92; Shipman v. Rollins, 98 N. Y. 311; Matter of Baer, 147 N. Y. 348, 41 N. E. 702.

We are now prepared to answer the question propounded in the third prayer of the complaint. The life beneficiary, Mrs. Wheeler, having died, leaving her surviving four children, to wit, the plaintiff, Herbert Wheeler, and the defendants, Annie Wheeler, Charles A. Wheeler, and George Wheeler, and the trustees not having exercised the power of sale in respect to the share devoted to her support, her children became immediately vested with the absolute title to said share, and being of age, are entitled to its immediate possession. They take as tenants in common, and, as against the trustees and those holding future contingent estates in the other shares, they are also tenants in common and have the right to a division and partition of their share from the other three shares in the way and manner provided for in the Code of Civil Procedure. Mellen v. Banning, 72 Hun, 176, 25 N. Y. Supp. 542; Blanchard v. Blanchard, 4 Hun, 287; Id., 70 N. Y. 615; Chap. Exp. Trusts & Powers, c. 15, § 557 et seq., and note. By the provisions of the real property law (Laws 1896, p. 567, c. 547, § 49), all expectant estates are now descendible, devisable, and alienable in the same manner as estates in possession. But this does not prevent a testator from making an expectant estate subject to be defeated by the exercise of a power of sale given to trustees, which must be exercised before the owner of the expectant estate becomes vested with the absolute title.

The foregoing makes answer, so far as an answer is now possible, to the third prayer of the complaint. It is not possible, until after the death of each life beneficiary, to determine who shall be entitled to take the share devoted to his support. Those who take must not only live until his death, but must survive him. It may be well here to note a distinction made in respect to the classes that shall take. In all instances they are alike, except in the case of the share devoted to the support of the testator's son, Alfred. In that case the descendants of any child of Alfred who may not survive Alfred are not included.

In respect to the fourth prayer of the complaint, I know no rule of law, and have not been referred to any, which prevents a testator from empowering trustees to act by a majority thereof. The general rule is that, where more than one trustee is appointed, all must join in order to make their action legal. I think there are no exceptions to this rule, and any attempted departure therefrom by direction of the testator must be strictly construed, and the power to act by less than the full number of trustees must be limited to the acts specifically designated in the will, and may not be enlarged by implication. The clause, however, must be construed with the other provisions which authorize the survivors of the trustees to act; and, when so construed, I am of the opinion that the term "majority" has reference to a majority of the survivors, and not to a majority of the full number of trustees. Hence, in case one trustee shall die, a majority of the survivors have

the power in their discretion to do the particular acts mentioned in the will; but as to all other matters the whole number of survivors must act in order to make their action legal.

In respect to the fifth prayer of the complaint, which is made in view of the fact that one of the trustees, Alfred T. Weed, has been adjudged a lunatic, it is my opinion that lunacy is not the same as death, that he is still one of the trustees of said estate, and that, immediately upon his becoming a lunatic, it was the duty of his co-trustees to make application (Real Prop. Law, Laws 1896, p. 575, c. 547, §. 92; Code Civ. Proc. §§ 2817, 2818) for his removal and for the appointment of another trustee in his stead.

Let a decision and judgment in conformity with these views be presented for settlement upon five days' notice.

Ordered accordingly.