## IN RE MURPHY'S ESTATE.

(No. 7,295.)

(Submitted January 10, 1935. Decided February 23, 1935.)

[43 Pac. (2d) 233.]

116

*Messrs. Gunn, Rasch, Hall & Gunn,* for Appellants William M. and John T. Murphy, III, submitted a brief; *Mr. M. S. Gunn* argued the cause orally.

*Mr. William Scallon,* for Respondent Jay Clare Murphy, *Mr. James Donovan,* of the Bar of Los Angeles, California, and *Mr. Edgar L. Bishop,* of the Bar of Seattle, Washington, of Counsel, submitted a brief; *Mr. Scallon* argued the cause orally.

*Mr. T. B. Weir* and *Mr. Harry P. Bennett,* for Trustees P. B. Heren and W. Binney Tait, submitted a brief; *Mr. Weir* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

John T. Murphy died in 1914, leaving a will in which he, after making provision for his widow, provided that: "I give, devise, and bequeath \* \* \* the remainder of my estate \* \* \* to \* \* \* A. L. Smith, \* \* \* Rolla P. Heren and Massena Bullard, as Trustees \* \* \* to take, hold and manage \* \* \* and from the net income thereof" to pay certain small annuities, and as to the re-

mainder to pay "one-third thereof to my daughter Frances D. Murphy; one-third thereof to my daughter Addie M. Murphy; one-sixth thereof to my son John T. Murphy, Jr., and one-sixth thereof to the children of my said son." It is provided that, until the net income shall be ascertained, in lieu of net income the trustees shall pay $500 per month to each of the daughters and $150 per month to the son, and a like amount to his children.

Paragraph 10 of the will provides that: "The principal from which the children of my said son are entitled as hereinbefore specified to receive the net income shall be divided into a number of shares equal to the number of said children, and the principal of the share of each · child shall be paid to such child when such child shall attain the age of twenty-one years. If any of said children shall die without issue the interest of said child shall go to the survivor or survivors of said children. The principal from which my said son is entitled * * * to receive the net income shall, upon the death of my said son be paid to his children in equal shares."

The will was made on November 21, 1912, at which time John T. Murphy, Jr., was married and had two children, John T. Murphy, III, born in 1907, and William M., born in 1908, but the husband and wife were separated and living apart. The will was duly admitted to probate in June, 1914, and A. L. Smith duly qualified as executor.

Paragraph 13 of the will provides that, in case of the death, resignation or incapacity of either of the trustees named, the remaining trustees should select another to act. Massena Bullard died in 1915, and W. B. Tait was appointed to succeed him, at some time subsequent to 1917.

On February 27, 1917, a final decree of distribution was made and entered in the matter of the estate, and therein three-fourths of the property of the estate was distributed to Smith and Heren, as the surviving testamentary trustees, in trust for the uses and purposes specifically set forth in the will.

During the period of ten years subsequent to entering upon the discharge of their duties, the trustees distributed the one-sixth of the income to the guardian of the two sons of John T. Murphy, Jr.; however, it is apparent that, at some time during that period, John T. Murphy, Jr., and the mother of the children were divorced, and the latter became the custodian and guardian of the children, and John T. Murphy, Jr., remarried; to this union was born, on April 8, 1927, a third son of John T. Murphy, Jr.—Jay Clare Murphy. As the eldest son of John T. Murphy, Jr., was born on June 6, 1907, the time for distribution of any part of the principal of the one-sixth part of the trust fund had not arrived at the time of the birth of Jay Clare Murphy.

Early in 1927 the trustees duly made and filed their report and account of their trusteeship covering the period from the beginning of the trust to December 31, 1926, which report and account was duly approved and allowed by the court. In 1933 the trustees made and filed their report covering the period from December 31, 1926, to December 31, 1932. This report shows that John T. Murphy III reached the age of twenty-one years on June 6, 1928, at which time the children of John T. Murphy, Jr., numbered three, and that John T. Murphy, Jr., was still living. At the date of the report the second son, William M. Murphy, had also reached the age of majority. Both John T. Murphy III and William M. Murphy have been declared incompetent and their mother, now Linda B. McGorty, has been duly appointed their guardian. Grace T. Murphy, mother of Jay Clare Murphy, is the duly appointed, qualified and acting guardian of the person and estate of her child. The trustees' account shows that up to December 31, 1932, there had been paid to the guardian of Jay Clare Murphy from the income of the trust estate $23,128.45, presumably being one-third of the income from one-sixth of the trust estate.

On request of their guardians, the court appointed M. S. Gunn, Esq., of the Helena bar, to represent John T. Murphy III and William M. Murphy, and William Scallon, Esq., of

the same bar, to represent Jay Clare Murphy, and granted leave to Messrs. James Donovan and Edgar L. Bishop, foreign attorneys under employment of petitioner Grace T. Murphy, also to appear on behalf of Jay Clare Murphy. On behalf of his clients, Mr. Gunn filed objections to the report and account of the trustees and an answer and cross-petition, wherein it is alleged that Jay Clare Murphy was not, and is not, one of the beneficiaries under the will of John T. Murphy and has no interest in the trust estate, and that it was so decreed and determined by the final decree of distribution in the matter of the estate of John T. Murphy. They protest the payment of the above-named portion of the income of the trust estate to the guardian of Jay Clare Murphy and demand that the trustees receive no credit for such payment.

Issue was joined by answer and cross-complaint on behalf of Jay Clare Murphy, and a hearing was had at which all parties interested were represented by counsel and heard; whereupon the court made and filed its findings of fact and conclusions of law, declaring, among other things, that the distribution of funds from the trust estate, including the payment of the portion of the income to the guardian of Jay Clare Murphy, is in all respects "fair, legal and proper," and in accordance with the will and the decree of final distribution in the Murphy estate. It is then "ordered, adjudged and decreed that the several items of disbursements from the trust estate * * * including the payments of income to Jay Clare Murphy, are hereby approved and allowed," and that "the said John T. Murphy III, William M. Murphy and Jay Clare Murphy are each and all within· the class of persons described as children of the testator's son John T. Murphy, Jr., in each subdivisions four (4), ten (10) and eleven (11) of clause fifth of the will as incorporated in the Decree of Final Distribution."

John T. Murphy III and William M. Murphy have appealed from the above portions of the judgment, thus raising the question as to whether or not Jay Clare Murphy is, under

the terms of the will and the decree of distribution in the Murphy estate, entitled to share in the income and corpus of the trust estate.

Any question as to the validity of the will or the correct- ness of the decree of final distribution has long since been foreclosed. (Secs. 10328, 10558, Rev. Codes 1921; *In re Estate of Murphy,* 57 Mont. 273, 188 Pac. 146.) The ques- tion here presented requires a construction of the decree of final distribution, and, as the decree follows and adopts the provisions of the will in defining the trust, such construction will, in effect, constitute a construction of the will; the decree cannot be given a different or broader interpretation than that given to the will. (*Manning* v. *Bank of California,* 216 Cal. 629, 15 Pac. (2d) 746; *In re Merchant's Estate,* 143 Cal. 537, 77 Pac. 475.)

A will is to be construed according to the intention of the testator (sec. 7016, Rev. Codes 1921), and that con- struction must be favored which will reconcile with the tes- tator's intention the several provisions of the will (*In re McLure's Estate,* 63 Mont. 536, 208 Pac. 900). Words occurring more than once in a will are presumed to have been used always in the same sense when the context does not show a contrary intention, or when the words are not applied to different subjects (*Carr* v. *Smith,* 25 App. Div. 214, 49 N. Y. Supp. 351, affirmed 161 N. Y. 636, 57 N. E. 1106; *McMurry* v. *Stanley,* 69 Tex. 227, 6 S. W. 412; *Stewart* v. *Stewart,* 61 N. J. Eq. 25, 47 Atl. 633; *In re Goetz's Estate,* 13 Cal. App. 198, 109 Pac. 145), and this rule "applies with double force where the word in question is found in two sen- tences in immediate succession." (*Allen's Appeal,* 69 Conn. 702, 38 Atl. 701, 702).

The provision found in subdivision 4 of the fifth clause of the will directing the trustees to pay one-sixth of the remaining net income of the trust estate "to the children of my said son" constitutes a gift to a class, the shares of each of whom are to be determined by the number of the class. "In legal contemplation, a gift to a class is the gift of an

aggregate sum to a body of persons, uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal shares, or some other definite proportions; the share of each being dependent for its amount upon the ultimate number." (6 Jarman on Wills, sec. 232, cited in *Re Estate of Murphy*, 157 Cal. 63, 106 Pac. 230, 137 Am. St. Rep. 110; *In re Henderson's Estate*, 161 Cal. 353, ██ 119 Pac. 496.) When the term "children" is used in a will, it is ordinarily given its primary meaning of all legitimate offspring of the first degree, unless the context of the will indicates a different intention. (*In re Henderson's Estate*, supra.)

At the time of the making of the will and the designation of the class, the son of the testator had but two children, John T. Murphy III and William M. Murphy, and this fact was, of course, well known to the testator. Had the testator intended that these two should alone share in the one-sixth part of the residue of the estate, his carefully drawn will would undoubtedly have so expressed his intention; instead the draughtsman of subdivisions 10 and 11, mentioned, scrupulously avoided any expression which would indicate an intention to limit the class to the two living children. Whenever the class, "the children of my said son," is mentioned, it is left indefinite as to the number constituting the class.

When the estate was settled and the assets thereof distrib-██ uted to the trustees, there were but two members of the class, and thereafter, up to the date of the birth of the third child, the income from the aggregate gift to the class was properly divided between the two boys or paid in full to their joint guardian for their use and benefit, but the principal was held intact, as the eldest of the children had not reached the age of twenty-one. A different question would be presented had John T. Murphy III reached the age of majority before the birth of Jay Clare and his proportion of the trust estate had been transferred to him. "When there is a gift to a class, the class is closed and the number determined at the period of distribution. Thus, if there is an immediate bequest to

the grandchildren of the testator, only those born at his death will take; after-born children are excluded. But again, if there is a bequest to those grandchildren of the testator who reach twenty-one, all grandchildren born before the eldest living grandchild reached twenty-one will take.'' (Gray's Rule Against Perpetuities, 95.)

The law favors equality among children in the distribution of estates, and in case of a doubtful construction it selects that which leads to such a result. (*Carroll* v. *Herring,* 180 N. C. 369, 104 S. E. 892.)

Reading the provision of the will as a general one intended for the benefit of all of testator's grandchildren by his son, it is a natural and reasonable one; excluding after-born grandchildren would be to render it unnatural and unreasonable and contrary to the natural meaning of the language employed. (*In re Van Wyck's Estate,* 185 Cal. 49, 196 Pac. 50; *In re Maltman's Estate,* 195 Cal. 643, 234 Pac. 898.) It follows that the payments to Jay Clare Murphy were legal and proper unless he is prohibited from participation in the trust estate because of some insurmountable rule of law barring his right.

The appellants contend, however, that, while children born prior to the death of the testator would fall within the class, Jay Clare, born long after such death, is barred because the bequests vested at the time of the testator's death. Our Codes provide that ''testamentary dispositions, including devises and bequests to a person on attaining majority, are presumed to vest at the testator's death'' (sec. 7040, Rev. Codes 1921), and ''a testamentary disposition, when vested, cannot be divested unless upon the occurrence of the precise contingency prescribed by the testator for that purpose'' (sec. 7041, Id.); and it is held that, where the direction is to pay when the legatee attains a certain age, and the interest or income from the fund is given to him in the meantime, a present gift is shown to have been intended, and the legacy vests in interest at the date of the testator's death (*Cropley* v. *Cooper,* 19 Wall. (U. S.) 167, 22 L. Ed. 109).

Here, however, there was no devise or bequest to persons on attaining majority, but to trustees "in trust" for certain uses and purposes. By the decree of distribution, on the closing of the estate, the corpus of the estate was distributed to the trustees to hold, in so far as here under consideration, until the oldest child of John T. Murphy, Jr., reached the age of twenty-one years, and, under the terms of the will, many contingencies might arise to change the division of the corpus of the trust estate for distribution. The shares of minors in the trust estate did not vest, and had not yet vested, in them when Jay Clare was born. (See *Whittingham* v. *California Trust Co.*, 214 Cal. 128, 4 Pac. (2d) 142.)

"The beneficiary of a trust takes no estate in the property itself * * * title vests in the trustee with the right in the beneficiary to enforce performance of the trust." (*In re Troy's Estate,* 214 Cal. 53, 3 Pac. (2d) 930, 932.)

Thus, on the death of the testator, the members of the .class under consideration in being at that time were vested in right at that time, and the after-born child was vested in right at the time of birth, but no one of the class was vested in possession or in title, or could be so vested until some one of the class attained the age of twenty-one years. (*Goldtree* v. *Thompson,* 79 Cal. 613, 22 Pac. 50; *In re Martin,* 57 L. T. N. S. (Eng.) 471; *In re Morris,* 33 Weeks Rep. (Eng.) 895.) This is manifest from the provision of subdivision 9 of clause 5 of the will, which empowers the trustees, if they deem it necessary or expedient, to sell any portion or the whole of the real or personal property of the estate and execute and deliver good and sufficient deeds or other instruments to convey it.

The appellants, however, contend that, if an interpretation ▉ is given to the will which would include Jay Clare Murphy in the class, he would not be entitled to receive his share of the trust estate until he arrives at the age of twenty-one years, and the will as to his share would be void as suspending the power of alienation beyond the period of lives of persons in being at the time of the death of the testator.

This question could not arise during our consideration of the will and the decree of final distribution in the Murphy estate for the purpose of ascertaining the intention of the testator. "The rule against perpetuities is not a rule of construction, but a peremptory command of the law. It is not, like a rule of construction, a test, more or less artificial, to determine intention. Its object is to defeat intention. Therefore every provision in the will or settlement is to be construed as if the rule did not exist, and then to the provision so construed the rule is to be remorselessly applied." (Gray's Rule Against Perpetuities, 3d ed., sec. 629.)

Having construed the will as including Jay Clare Murphy in the class designated, does such inclusion come within the rule against perpetuities? Our statutes, in so far as applicable here, are as follows: "The absolute power of alienation cannot be suspended, by any limitation or condition whatever, for a longer period than during the continuance of the lives of persons in being at the creation of the limitation or condition." (Sec. 6705, Rev. Codes 1921.) "Every future interest is void in its creation which, by any possibility, may suspend the absolute power of alienation for a longer period than is prescribed in this chapter. Such power * * * is suspended when there are no persons in being by whom an absolute interest in possession can be conveyed." (Sec. 6706, Id.) "The death of the testator * * * is to be deemed the time of the creation" in case of wills. (Sec. 6721, Id.) "The suspension of all power to alienate the subject of a trust, other than a power to exchange * * * or to sell it and reinvest the proceeds * * * is a suspension of the power of alienation." (Sec. 6733, Id.)

These provisions were adopted from California and were a part of the so-called "Field's Code" of 1865, which purported to be a codification of the laws of the state of New York, as embodied in their statutes and decisions of courts; they first appeared in our Codes of 1895. (See "History" footnotes to sections above, Rev. Codes 1921.) Before such adoption, the California provisions (secs. 715, 716 and 722,

Cal. Civ. Code) were construed by the supreme court of that state (*Goldtree* v. *Thompson,* supra), and in 1857 the rules enunciated in the "Field's Code" were laid down by the supreme court of New York (*Tucker* v. *Bishop,* 16 N. Y. 402); this decision presumably furnished the basis of the corresponding sections of that Code.

The adoption of a statute from another state after construction thereof by the highest court of such state carries with it the implied approval of that construction, provided the statute as adopted is silent as to the manner of its construction. (*O'Connell* v. *State Board of Equalization,* 95 Mont. 91, 25 Pac. (2d) 114.) As in the case of a former decision of this court, such decisions are controlling here, but will not be followed if not founded upon correct reasoning. (*Leffek* v. *Luedeman,* 95 Mont. 457, 27 Pac. (2d) 511, 91 A. L. R. 286.) In other words, this court will overrule a former decision of this court, or disregard a controlling decision of a sister state, when convinced that such decision is not sound.

The case of *Tucker* v. *Bishop,* supra, is practically on all-fours with the instant case, and the decision therein disposed of every question here presented. On the question now considered, the supreme court of New York held that each of the children living at the time of the death of the testator took a *vested* interest in an equal share of the fund bequeathed, the possession of which was postponed and uncertain, subject to be diminished in quantity by the birth of a subsequent child before the first living child became twenty-one years of age. That, if the uncertainty of the quantity of interest of the children in being at the death of the testator would suspend the power of alienation, which the justice writing the opinion did not think it would, such suspension could only endure for one life in being at the creation of the estate—that of the parent—and therefore the will involved no illegal suspension of the absolute ownership or power of alienation.

In the *Goldtree Case* the supreme court of California held that, under provisions similar to this in the instant case, a child born after the death of the testator, but during lives in being at the time of the creation of the interest, would take an interest, vested when born, and in possession contingent upon attaining majority, which would not render the interest devised void under the California statutes cited. The court reviewed at length the growth and history of the rule against perpetuities culminating, in that state, in the statutes cited.

It is immaterial that the courts of either New York or California have, either because of changes in their statutes or otherwise, held to rules seemingly in conflict with the decisions cited; such was the law of the state from which we adopted our sections in 1895. Several California cases are cited by appellants, but no one of them is as near in fact conditions to the case at bar as is the Goldtree opinion, and, while the opinion has been repeatedly cited in more recent cases, in no one of them is it criticised or overruled. We deem the construction given to the statutes reasonable and sound, and therefore binding upon this court as indicating the intention of the legislature in adopting our statutes from California and the "Field's Code."

As stated in California Jurisprudence: "There is a distinction between the rule against perpetuities and statutory provisions, such as those contained in the California Code, which prohibit the suspension of the power of alienation for a prescribed period. Much confusion in the decisions has resulted from the failure to observe such distinction. The rule against perpetuities is directed toward the prevention of the vesting of estates at remote periods of time, whereas the statutes do not insist upon the vesting of estates, but only upon their alienability. Limitations * * * which may extend for a period beyond that limited by the rule against perpetuities are not invalid in California so long as there are parties in being capable of passing a complete and unlimited title, and provided such limitations are not

obnoxious to the rule against suspending the power of alienation.'' (20 Cal. Jur. 1035, and cases cited.)

The prescribed suspensions are such as arise from the instrument by which the estate is created and not such as exist outside of the instrument. Under such statutes minority of children, working a postponement of the vesting of title, does not work a suspension within the meaning of the statute (20 Cal. Jur. 1037, and cases cited, particularly *In re Estate of Campbell,* 149 Cal. 712, 87 Pac. 573); nor does the postponement of possession or enjoyment of property, inasmuch as such postponement does not prevent the interest from vesting or from being conveyed or transferred (48 C. J. 1023; *Matter of Bray,* 118 App. Div. 533, 102 N. Y. Supp. 989; *Bascom* v. *Weed,* 53 Misc. 496, 105 N. Y. Supp. 459; *Galway* v. *Bryce,* 10 Misc. 255, 30 N. Y. Supp. 985).

Here the postponement created by the will is during the life of John T. Murphy, Jr.; as asserted by both of counsel, the power of alienation is suspended until the occurrence of one of two events—his death, or the prior attaining of the age of twenty-one of one of his children. Either of these events would have closed the class, as it would have called for a distribution; but neither of these events occurred prior to the birth of Jay Clare Murphy. It follows that the provisions attacked were not void under the above statutes and that Jay Clare Murphy takes as one of the class for which provision is made.

The judgment and decree must therefore be affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.