Courts of Special Sessions have to be held by justices specially appointed for that purpose, and three must sit to make a court. Laws 1897, p. 500, c. 378, tit. 3, § 1405 et seq. And appeals from such courts are the same as from judgments on indictments, viz., to the Appellate Division of the Supreme Court (section 1414).

By subsequent sections of this same title of the charter, which came in as amendments or additions after the charter was in effect, the justices of Special Sessions of the First division (Manhattan and Bronx boroughs), and those of the Second division (Brooklyn, Queens and Richmond boroughs), are respectively required to assign "a separate part for the hearing and disposition of cases heretofore within the jurisdiction of city magistrates involving the trial or commitment of children, which part shall be called a children's court." The children are to be under 16 years of age. It is then provided that the "justice or justices" holding such a court shall "have all the powers, duties and jurisdiction now possessed by the city magistrates in such cases" and shall "supersede" such magistrates therein.. This, be it observed, relates only to magisterial powers and duties, which it confers on the justices of the Special Sessions Courts, whereas theretofore they could not act as magistrates, but only as a Court of Special Sessions. It is also provided that in. the trial of such children on charges of misdemeanors one of such justices instead of three may constitute such children's court of Special Sessions unless the defendant objects thereto. Laws 1903, pp. 361, 363, c. 159, §§ 1418, 1419.

In the foregoing system no appeals are provided for by the city charter except by section 1414, and that only provides for appeals from convictions by courts of Special Sessions. Other appeals, i. e., from orders or judgments of magistrates are left as they were. The transfer of the trial of those lesser charges not amounting to crimes against such children from the city magistrates, who theretofore tried them, to the justices of the children's court of Special Sessions, as magistrates—i. e., from one set of magistrates to another set—did not change the method of appeal in such cases. Section 749 of the Code of Criminal Procedure regulates appeals from magistrates, and requires them to be to the County Court.

The order should be reversed, and the appeal heard in the County Court. All concur.

---

(118 App. Div. 533)

## In re BRAY.

(Supreme Court, Appellate Division, Fourth Department. March 6, 1907.)

PERPETUITIES—VESTED REMAINDERS—SUSPENSION OF POWER OF ALIENATION.

Where a testator bequeathed his house and land to his brother, to hold until the last of his four children should become of age and then to be sold and divided equally between the children, the remainder to the children was vested, and there was no suspension of the power of alienation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perpetuities, § 46.]

Appeal from Surrogate's Court, Niagara County.

In the matter of the final settlement of the accounts of Timothy Bray as executor of the last will and testament of David White, deceased.

From a part of the decree of the Surrogate's Court, the executor appeals. Reversed and remanded.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

S. E. Filkins, for appellant.

G. D. Judson and George F. Thompson, for respondents.

SPRING, J. David White, of the county of Niagara, died October 29, 1902, leaving a last will and testament. In the first item, after a legacy to the wife of his brother Patsey, he provided:

"I give and bequeath to my brother, Patsey White, the use of my house and seventeen acres of land lying on the extension of Mill street, in the town of Royalton, until the last of my children shall become of age. Then the property shall be sold and divided equally between my children, share and share alike."

The testator left four minor children, his only heirs at law. The land devised was sold by proceedings in the Surrogate's Court to pay the debts of the testator, and after paying the same there was a surplus, which came into the hands of the executor and was included among the assets for distribution upon the judicial settlement of his account. The surrogate, in construing the provision of the will quoted, for the purpose of decreeing distribution, has determined that the division of the property of the testator is suspended during the lives of the four minor children, which would be an unlawful suspension, and by his decree has directed distribution of this surplus to the guardians of the respective infants.

We cannot concur in his decision. The testator did not create any trust in his brother. He only permitted him to enjoy the use of the property for a designated time. The primary scheme of the will apparently was to provide for his children, and he accomplished that purpose by vesting the title in them absolutely, but not to be enjoyed in possession until the youngest child attained his majority. They held a future estate with a precedent estate created at the same time. Section 27, Real Property Law (chapter 547, p. 564, Laws 1896). There was no suspension of the power of alienation. "The absolute power of alienation is suspended only when there is no person in being by whom an absolute fee in possession can be conveyed." Section 32, Real Property Laws. There are persons in being who can convey the property devised by the testator. Patsey White, who had the use, and the children, in whom the fee was vested, could pass an indefeasible title at any time by joining in a conveyance of the premises, and immediate possession of the premises could be given. The remainder was not contingent, but vested; and the construction which permits this will be upheld where it can be consistently done. Hersee v. Simpson, 154 N. Y. 496, 48 N. E. 890; Miller v. Gilbert, 144 N. Y. 68, 38 N. E. 979. If one of the children died, his title would pass by descent to his heirs at law, even though the date of possession was not reached.

The distinction between this case and others which have been held to offend against the statute of perpetuities is that in that class of cases a trust was created and the estate did not vest, as in Haynes v. Sherman et al., 117 N. Y. 433, 22 N. E. 938, while here the devisees took the title

immediately upon the death of their devisor, but the enjoyment of it was postponed.

The decree, so far as appealed from, should be reversed, with costs to appellant payable from the fund, and the proceeding remitted to the Surrogate's Court of Niagara county to correct its decree in compliance with this opinion. So ordered. All concur.

---

(118 App. Div. 550)

### FRANCE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. March 6, 1907.)

CARRIERS—INJURIES TO PASSENGERS—QUESTIONS FOR JURY.

Whether a railway switch moved while a train was passing over it, and, if so, whether such movement resulted from the defective condition of the switch itself, or the appliances for moving it, or from the negligence of the tower man in operating such appliances, *held*, under the evidence, a question for the jury, in an action for injuries to a passenger on such train.

McLennan, P. J., dissenting.

Action by Oswald D. France against the New York Central & Hudson River Railroad Company. Motion for new trial after nonsuit. Ordered to be heard in the first instance at the Appellate Division. New trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Roberts, Becker, Messer & Groat, for plaintiff.

Ira A. Place and Pooley & Spratt, for defendant.

WILLIAMS, J. The exceptions taken by plaintiff should be sustained, and the motion for a new trial granted, with costs to plaintiff to abide event. The action is to recover damages for injuries to plaintiff, alleged to have resulted from defendant's negligence. The nonsuit was granted for failure to make a case for the jury as to the defendant's negligence. Only this question need be considered here. No other question is raised by counsel.

The plaintiff was a conductor on the Lehigh Valley Railroad, and on the occasion of the accident was upon a train running between Suspension Bridge and Buffalo. Between the bridge and Tonawanda the Lehigh trains used the tracks, and were subject to the control and the rules and regulations, of the defendant; the Lehigh having, however, its own train crews. About 1,000 feet from the station at the bridge there was a switch. Lehigh trains for Buffalo at this point took the track bearing off to the left. Other trains took the right track, leading upon the Michigan Central tracks and across the bridge over Niagara river. At the time of the accident the plaintiff's Lehigh train left the bridge station for Buffalo. As it approached the switch in question, the train took the Buffalo track, and the engine and two cars and the forward truck of the third car passed the switch safely and properly; but the rear trucks of the third car, the last car on the train took the bridge track, and ran out towards the Michigan Central tracks. As a result, the third or rear car was drawn out of shape, was shaken up, and the plaintiff was thrown from the rear platform and injured. For these