RODEY v. STOTZ.

1. WILLS—CONSTRUCTION.
   The law favors the upholding of a will and the carrying out of the intention of the testator unless fatal defects appear therein.

2. PERPETUITIES—SUSPENSION OF POWER OF ALIENATION—WILLS.
   Provisions of will leaving· use of testator's real and personal estate to two nephews until the youngest of their respective children shall have attained the age of 21 years and remainders to such children, naming them, *held*, to provide no suspension of the absolute power of alienation as forbidden by statute so far as realty is concerned as there is no suspension of the power of alienation when there are ascertainable persons in being who together can convey an absolute fee or interest in possession whether their interests are vested or contingent (3 Comp. Laws 1929, §§ 12934, 12935).

3. SAME—SUSPENSION OF POWER OF ALIENATION—STATUTES.
   Statute barring suspension of absolute power of alienation for a longer period than during the continuance of two lives in being at the creation of the estate applies solely to realty (3 Comp. Laws 1929, § 12935).

4. Same—Common-Law—Statutes.

The common-law rule against perpetuities has been superseded in Michigan by statute (3 Comp. Laws 1929, §§ 12934, 12935).

5. Same—Restraints on Alienation—Vesting of Estate—Statutes.

Statute providing rule prohibiting suspension of absolute power of alienation for more than two lives in being at the creation of the estate *held,* not thereby to provide any rule as to remoteness of vesting (2 Comp. Laws 1929, §§ 12934, 12935).

6. Estates—Minority—Death.

A term measured by a minority ends upon the death of the minor.

7. Wills—Construction—Estates.

The law favors the construction of a will which regards an estate vested rather than contingent.

8. Same—Vested Remainders—Death Before Possession Reached.

Bequest of entire estate to named children of two of testator's nephews subject to use in nephews of property bequeathed to their respective children until respective youngest child should come of age gave children vested, not contingent, remainders, notwithstanding possible death of a child before reaching possession; hence, was a valid bequest.

9. Same—Intent—Beneficiaries—Classes.

Intent of testator as derived from record and will *held,* to be that one-half of his estate was to go to four named children of one nephew and remaining half to four named children of another nephew as two separate classes where they were grouped and referred to as children of respective nephews.

10. Same—Classes of Beneficiaries—Specific Names—Afterborn Children.

No question as to whether any afterborn children of either of testator's nephews may enter the class of beneficiaries under will is presented where testator named the specific children of each class.

11. Same—Construction—Interposition of Claimed Ambiguities.

Construction of will given by trial judge which is in accordance with will and record made is affirmed, notwithstanding interposition of claimed ambiguities and other questions as to distribution between named beneficiaries where such matters are no concern of appellants, the unremembered relatives.

12. SAME—INCOME—AMBIGUITY.

> Under will giving all the income of testator's estate to one nephew in one paragraph and all the income to another nephew in the next paragraph in each case until youngest child of respective nephew reached majority, reading of entire instrument *held*, to remove all ambiguity by showing testator's purpose was to divide the estate into two parts, one-half to go to children of one nephew and other half to children of other subject to rights of nephews to receive income from respective halves until respective youngest child became of age.

Appeal from Monroe; Carr (Leland W.), J., presiding. Submitted April 15, 1937. (Docket No. 97, Calendar No. 39,403.) Decided May 21, 1937.

Bill by George W. Rodey and others against Fred Stotz, individually and as executor under the last will and testament of Peter Rode, deceased, and others, for the construction of a will. Decree for defendants. Plaintiffs appeal. Affirmed.

*Harry M. Stone, N. Calvin Bigelow* and *Henry P. Fisher* (*Frank W. Atkinson,* of counsel), for plaintiffs.

*Edgar G. Gordon,* for defendants.

BUTZEL, J.  Peter Rode, unmarried, died testate at the age of 79. He mentioned in his will only two nephews, Fred and Adolph Stotz, and their children. He was very fond of these relatives and spent considerable time with them. He also left surviving him a brother, a sister and descendants of deceased brothers and sisters who are the plaintiffs in the present suit brought for the purpose of construing his will. He had reasons why he did not care to make plaintiffs the recipients of his bounty and in response to his inquiry, was informed by his

attorney that it would be unnecessary to mention them in the will. He stated that he wanted to leave everything to Fred Stotz and Adolph Stotz and their children in the manner set forth in a written memorandum left with his attorney. Fred and Adolph each had four children who, together with their fathers, are the beneficiaries under the will. It was executed about four years prior to the testator's death and has been duly admitted to probate. It is only necessary to refer to the following paragraphs of the very brief instrument:

"2. I give, devise and bequeath to my nephew Adolph Stotz, the full use, income benefit and control of all my property, both real and personal of which I may die seized, and which is herein bequeathed and devised to the children of said Adolph Stotz, until the youngest of said children shall have attained the age of 21 years.

"3. I give, devise and bequeath to my nephew Fred Stotz, the full use, income benefit and control of all my property, both real and personal of which I may die seized, and which is herein bequeathed and devised to the children of said Fred Stotz, until the youngest of said children shall have attained the age of 21 years.

"4. Subject to the provisions of paragraph 2, and paragraph 3 hereof, I give, devise and bequeath all my property, both real and personal, of which I may die seized, to the following named children of my said nephew, Adolph Stotz, to-wit: Lydia Stotz, Harold Stotz, Erhardt Stotz, and Herbert Stotz, and to the following named children of my said nephew, Fred Stotz, to-wit: Edmund Stotz, Mildred Stotz, Wilmot Stotz and Helma Stotz, share and share alike."

The appraisal of the assets of the estate shows personal property of the value of $56,633.47 and

real property of the value of $22,600. Plaintiffs seek in their bill to have the will set aside and intestacy declared on numerous grounds which we shall discuss. All of the parties mentioned in the will, with the exception of Edmund Stotz, a grandnephew and son of Fred Stotz, survived the testator. The record does not show Edmund's age at the time of his death. The other surviving grandnephews and grandnieces were all minors when the suit was begun. There is no claim that Edmund had any children at the time of his death. .

The trial judge held that the will was free from ambiguity; that it was the plain intention of the testator to leave one-half of his estate to the children of Fred Stotz, subject to the latter's right to the use and enjoyment of the income from such one-half until his youngest child reached the age of 21, and likewise, to leave the other one-half to the children of Adolph Stotz, subject to his right to the use and enjoyment of the income from such one-half until his youngest child reached the age of 21, and that each set of children took one-half of the estate as a class. Appellants admit that a casual reading of the will might justify the construction placed upon it by the court, but claim that a more careful analysis and closer scrutiny discloses such statutory violations and ambiguities so as to destroy the validity of the will. The law favors the upholding of a will and the carrying out of the intention of the testator unless fatal defects appear therein. It does not favor a microscopic search to ferret out flaws which, upon a fair examination, are found not to exist. We shall discuss the objections that appear to have any merit.

It is claimed that the will violates 3 Comp. Laws 1929, §§ 12934, 12935, in so far as the disposition of

realty is concerned. Section 12934 provides as follows:

"Every future estate shall be void in its creation, which shall suspend the absolute power of alienation for a longer period than is prescribed in this chapter; such power of alienation is suspended when there are no persons in being, by whom an absolute fee in possession can be conveyed."

Section 12935 states:

"The absolute power of alienation shall not be suspended by any limitation or condition whatever, for a longer period than during the continuance of two lives in being at the creation of the estate."

We find that there was no suspension of the absolute power of alienation as forbidden by section 12934, nor a violation of section 12935. This latter statute refers solely to real property. *Michigan Trust Co.* v. *Baker,* 226 Mich. 72, 76. There is no suspension of the power of alienation when there are ascertainable persons in being, who together can convey an absolute fee or interest in possession and this whether their interests are vested or contingent. See *Russell* v. *Musson,* 240 Mich. 631.

The rule in Michigan is not at variance with that in other States where we find it again stated under almost similar factual situations.

In *Simpson* v. *Cook,* 24 Minn. 180, 185, 186, the testator died leaving five minor children. He devised his realty in trust for the collection of the rents and profits and their application to the support of his widow and the education and support of his children. The will provided further that there be no division until the youngest child should become of lawful age and then all of the real and personal property wherever situated be equally divided

between his wife and children, share and share
alike. The court said:

"In this case there were, at the testator's death,
five minor children, and if the will, properly con-
strued, provides for the suspension to continue dur-
ing all of the minorities, so that it would not cease
until all the minors became of age or died, it would
be certainly for a period longer than that allowed
by the statute. The expression in the will is, 'until
the youngest child shall become of lawful age,'
which is equivalent to the expression, 'until the
minority of the youngest child shall cease.' On the
part of the plaintiffs it is assumed that this means
the youngest child who shall live and become of law-
ful age, and, if that be the true meaning, it makes
the suspension depend on five minorities. *Hawley*
v. *James,* 5 Paige Ch. 318, 16 Wend. (N. Y.) 61;
*Thomas' Estate,* 1 Tucker (N. Y.), 367.

"On the part of the defendants it is claimed that
it means the youngest child living at the death of the
testator; and, if that be so, the suspension is to
cease with the coming of age, or death, if it happen
sooner, of that one child, and it depends on only one
minority. * * * The most natural meaning to
give to it is, that the testator referred to one child
who might be known at the time the will took effect;
that is, the one who should answer the description,
'youngest child,' at that date. A general rule for
the construction of contracts, and it is peculiarly ap-
plicable to wills, is that construction shall be favor-
able, so that the agreement may, if possible, be sup-
ported; and if the words be susceptible of two
senses—one agreeable to, the other against law—
the former sense shall be adopted. 1 Chitty on Con-
tracts (11th Am. Ed.), pp. 111, 112; *DuBois* v. *Ray,*
35 N. Y. 162; *Butler* v. *Butler,* 3 Barb. Ch. (N. Y.)
304; *Burke* v. *Valentine,* 52 Barb. Sup. (N. Y.) 412,
425. In the last two cases the same form of words as
those we are considering occur in wills; and the
validity of the limitations depended on whether, in

the one case, by 'youngest child,' and in the other, 'eldest child,' the testator meant the youngest or eldest child living at the time the will went into effect, or the youngest or eldest who should live to majority; and to sustain the will the court, in each case, held to the first of these meanings. Such, we think, was the meaning of this will. There was, therefore, no illegal suspension of the power of alienation.''

Again in *Jacoby* v. *Jacoby,* 188 N. Y. 124 (80 N. E. 676), the testator provided that the realty and personalty be equally divided and shared between the testator's wife and four children after the youngest child should attain the age of 21, and that until such time, his wife should receive and have the sole use of the rents and income of his real estate. The court said:

''Unless there is something in this sixth clause directing an unlawful suspension of the power of alienation it is, therefore plain that the estate has vested in the five named residuary legatees, subject to the wife's use during the minority of the youngest child, or until his earlier death, for it is well settled that a term measured by a minority ends upon the death of the minor. (*Roe* v. *Vingut,* 117 N. Y. 204 [22 N. E. 933]; Real Property Law, § 32).''

The court further said:

''We cannot subscribe to the view that there is anything in the will to indicate that it was the testator's intention to suspend the power of alienation for a fixed period of time. On the contrary, the term used, when given its usual legal meaning, imports simply a suspension during a 'minority,' and that expression, as defined by the statute, is deemed to signify 'a part of a life and not an absolute term equal to the possible duration of such minority.' (Real Property Law, § 32.)

"Neither is the second contention of appellants, to the effect that the power of alienation is suspended for more than two lives in being, any more admissible than the first. If we should assume that the phraseology of the will were ambiguous, so that it might be given either of two meanings, it would be our duty to adopt that which would uphold the will. (*Hopkins* v. *Kent*, 145 N. Y. 363 [40 N. E. 4].) Thus if we were in doubt as to whether the division of the testator's property is directed to be made when the youngest of his children shall have arrived at the age of 21 years, or upon the majority of the youngest of his children who shall reach that age, we should have to interpret the will as indicating the former disposition, because it is valid, as against the latter direction which is invalid.

"It is not necessary, however, to go to that extremity, for we think the testator's language is reasonably clear and unambiguous. He directs that his property 'be equally divided and equally shared' among his wife and children, 'after the youngest child of them shall have attained the age of 21 years.' If we apply to this language the rule that the will speaks as of the time of the testator's death, it plainly refers to the youngest of his children then living, who was in fact the testator's youngest child, and a suspension of the power of alienation during 'his minority' is unquestionably valid (Chaplin on Suspension of the Power of Alienation (3d Ed.) § 100; *Van Cott* v. *Prentice*, 104 N. Y. 45 [10 N. E. 257])."

*In the Matter of Bray*, 118 App. Div. 533 (102 N. Y. Supp. 989), on a somewhat similar state of facts, the court said:

"The testator did not create any trust in his brother. He only permitted him to enjoy the use of the property for a designated time. The primary scheme of the will, apparently, was to provide for his children, and he accomplished that purpose by

vesting the title in them absolutely, but not to be enjoyed in possession until the youngest child attained his majority. They held a future estate with a precedent estate created at the same time. * * *

"There was no suspension of the power of alienation. 'The absolute power of alienation is suspended, when there are no persons in being by whom an absolute fee in possession can be conveyed.' (Real Property Law, § 32.) There are persons in being who can convey the property devised by the testator. Patsey White, who had the use, and the children in whom the fee was vested, could pass an indefeasible title at any time by joining in a conveyance of the premises, and immediate possession of the premises could be given."

We find that there was no violation of the statute suspending the absolute power of alienation whatsoever. There were parties in being at all times who together could convey an absolute fee in possession.

We need not discuss the disposition of realty in the light of the common-law rule against perpetuities relative to the vesting of remote contingent interests as we held in *Windiate* v. *Lorman,* 236 Mich. 531, that the rule was suspended by the above statutes. The question, however, is raised whether 3 Comp. Laws 1929, §§ 12934, 12935, lay down a rule as to remoteness of vesting in addition to a rule regarding the suspension of the power of alienation. This question is raised and answered in 2 Simes, Future Interests, p. 481, in which it is stated:

"Is the power of alienation illegally suspended if there is a contingent future interest which may not vest within lives in being, even though there is a group of ascertained persons who may alienate in fee simple absolute? In other words, do these statutes lay down, not merely a rule as to the legal power of alienation, but also a rule as to remoteness

of vesting? While the matter is not free from doubt, it would seem that the statutes are not regarded as announcing any rule as to remoteness of vesting," citing *Russell* v. *Musson, supra,* 635; *Fitz Gerald* v. *City of Big Rapids,* 123 Mich. 281, 283; *Windiate* v. *Lorman,* 236 Mich. 531, 534; *Gardner* v. *City National Bank & Trust Co.,* 267 Mich. 270.

Appellants, however, claim that the will offends the common-law rule against perpetuities as to the personal property; that the realty and personalty must be considered together and the evil in one vitiates the other. We need not even discuss this claim if the title vested in interest in the beneficiaries on the death of the testator. 2 Simes, Future Interests, § 498. The law favors the construction which regards an estate vested rather than contingent. In *Matter of Bray, supra,* where the testator bequeathed his property to the use of his brother until the last of his children should become of age, at which time it was to be divided equally among them — a fact situation very similar to that in the instant case — the court said:

"The remainder was not contingent, but vested; and the construction which permits this will be upheld where it can be consistently done (*Hersee* v. *Simpson,* 154 N. Y. 496 [48 N. E. 890]; *Miller* v. *Gilbert,* 144 N. Y. 68 [38 N. E. 979]).

"If one of the children died his title would pass by descent to his heirs at law, even though the date of possession was not reached."

The trial court held that the children of Fred, as a class, took one-half of the estate, and those of Adolph, as a class, took the other one-half. It is true that the testator referred to the grandnephews and grandnieces as individuals and mentioned their names, but he grouped them in two sets and de-

scribed them as the children of their respective
parents. In *Strauss* v. *Strauss*, 363 Ill. 442 (2 N. E.
[2d] 699, 105 A. L. R. 1386), the court said:

"As was stated in *Stedman* v. *Priest*, 103 Mass.
293: 'Although it is a rule that, when an aggregate
fund is given to several to be divided among them,
*nominatim*, in equal shares, if one of them dies be-
fore the testator, his share will lapse, yet the mere
fact that he mentions by name the individuals who
make up the class is not conclusive, and if the inten-
tion to give a right of survivorship is collected from
the remaining provisions, applied to the existing
facts, such intention must prevail.' "

A reading of the record and the will convinces us
that the testator intended to leave one-half of his
estate to the children of Adolph, as a class, and the
other half to the children of Fred, as a class.

Except possibly for the purpose of showing am-
biguity, it would make no difference, as far as ap-
pellants are concerned, whether the estate went
entirely to all of the grandnephews and grandnieces
mentioned in the will as a single class or to the re-
spective children of each parent as two separate
classes. Defendants have not appealed and are in
accord with the decision of the trial judge, who cor-
rectly found that the children of each parent took
as two separate classes.

No question remains open as to whether any after-
born children of either parent may enter the class,
because the testator has foreclosed this question
himself by naming the specific children of each
class.

Appellants further claim ambiguity in the will
because in paragraph two the income from all of the
estate is given to Adolph Stotz, and in paragraph
three, again the income from all of the estate is

given to Fred Stotz, in each case until the youngest child in the respective class reaches the age of 21. A reading of the entire instrument removes all ambiguity and shows that the purpose of the will was to divide the estate into two parts, one-half of which was to go to the named children of Adolph, and the other half to those of Fred, subject to the rights of Adolph and Fred to receive the income from the property so left to their respective children until the youngest of each class reaches the age of 21.

Attention is further called to the fact that Edmund, a son of Fred, predeceased the testator. We do not believe that appellants are concerned in this question. Appellees have not appealed from the decree of the trial court. Appellants have made other minor claims against the validity of the will. Having arrived at the conclusions hereinbefore set forth, we do not believe they merit further discussion. The decree of the trial court is affirmed, with costs to appellees.

FEAD, C. J., and NORTH, WIEST, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.